In re NATIONAL CENTURY FI-
NANCIAL ENTERPRISES,
INC., et al., Debtors.

Unencumbered Assets Trust, Erwin I.
Katz, Ltd., Erwin I. Katz, Jones Day,
and Matthew A. Kairis, Plaintiffs,

v.

Tracey Hampton–Stein, Defendant.

Bankruptcy No. 02–65235.
Adversary No. 09–2281.

United States Bankruptcy Court,
S.D. Ohio,
Eastern Division,
at Columbus.

July 7, 2009.

Robert J. Madden, Kathy D. Patrick, Sydney Ballesteros, Matthew C. Corcoran, Brandon T. Allen, Houston, TX, Matthew A Kairis, Charles M. Oellermann, David A. Beck, Jones Day, Joshua A.T. Fairfield, Paul R. Brown, Joseph M. Witalec, Drew H. Campbell, Kasey T. Ingram, Dinsmore & Shohl LLP, Columbus, OH, Ernest B. Williams, Nashville, TN, Harold B. Murphy, Boston, MA, Paul E Harner, Chicago, IL, Robert R. Hall, Phoenix, AZ, Sean P. Byrne, New Albany, OH, for Debtors.

David M. Martin, Springfield, OH, for Defendant.

### MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFFS' MOTION TO ENJOIN A SECOND LAWSUIT FILED JUNE 25, 2009 IN FLORIDA STATE COURT

JOHN E. HOFFMAN, JR., Bankruptcy Judge.

This matter is before the Court on a motion to enjoin ("Motion to Enjoin") (Doc. 10) a second lawsuit ("Second State Court Action") that Tracey Hampton–Stein ("Hampton–Stein") filed on June 25, 2009 in the Fifteenth Judicial Circuit Court in and for Palm Beach County, Florida ("State Court").

### I. Jurisdiction

The Court has jurisdiction to hear and determine this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the general order of reference entered in this district. This is a core proceeding. *See* 28 U.S.C. § 157(b)(2)(A) and (O).

### II. Findings of Fact

The plaintiffs in this adversary proceeding—the Unencumbered Assets Trust ("UAT"), Erwin I. Katz, Ltd. ("Katz Ltd."), Erwin I. Katz ("Katz"), Jones Day and Matthew A. Kairis ("Kairis") (collectively, "Plaintiffs")—have filed the Motion to Enjoin in connection with their amended complaint ("Amended Complaint") (Doc. 9) for injunctive and declaratory relief and damages, in which they allege, among other things, that Hampton–Stein violated the doctrine set forth in *Barton v. Barbour*, 104 U.S. 126, 26 L.Ed. 672 (1881) *("Barton Doctrine")* by filing both the Second State Court Action and a prior lawsuit she commenced in the State Court. The Plaintiffs have attached a copy of the complaint by which Hampton–Stein commenced the Second State Court Action ("Second Florida Complaint") to the Amended Complaint. For the reasons set forth below, the Court will grant the requested preliminary injunction of the Second State Court Action.

The order granting the preliminary injunction comes on the heels of an order the Court entered less than two weeks ago (Doc. 8) deferring consideration of the Plaintiffs' previously-filed motion for a temporary restraining order and preliminary injunction ("Prior Motion") (Doc. 4). The Prior Motion sought entry of an order

enjoining Hampton–Stein from pursuing the first lawsuit she filed against the Plaintiffs in the State Court ("First State Court Action"). In the First State Court Action, Hampton–Stein made certain allegations relating to National Century Financial Enterprises, Inc. and its affiliated debtors (collectively, "NCFE Debtors"). In particular, she alleged that Jones Day and Kairis, a Jones Day partner, engaged in a conspiracy against her both before and after the NCFE Debtors commenced their bankruptcy cases on November 18, 2002 and February 14, 2003 ("Petition Dates"). The basis for the allegations against Jones Day and Kairis is that they represented the NCFE Debtors both prepetition and postpetition and represented the UAT after it came into existence postpetition. Hampton–Stein also alleges that Katz Ltd. and its principal, Katz, participated in the conspiracy.

Jones Day became restructuring counsel to the NCFE Debtors pursuant to an order of the Court approving the NCFE Debtors' application to retain the law firm. *See* Doc. 421 in Case No. 02–65235. The application identified Kairis as one of the Jones Day attorneys who would be representing the NCFE Debtors. *See* Doc. 19 in Case No. 02–65235. On April 16, 2004, the Court entered its Order Confirming the Fourth Amended Joint Plan of Liquidation of National Century Financial Enterprises, Inc. and Its Debtor Subsidiaries, as Modified ("Confirmation Order") (Doc. 2789 in Case No. 02–65235). The plan of liquidation confirmed by that order ("NCFE Plan"), a copy of which is attached to the Confirmation Order, created the UAT for the purpose of liquidating the assets transferred to it in furtherance of the NCFE Plan. *See* NCFE Plan § IV.D.2 ("The [UAT] shall be established for the sole purpose of liquidating the Assets transferred to it in furtherance of the [NCFE] Plan for the sole benefit of the holders of beneficial interests in the [UAT], with no objective to continue or engage in the conduct of trade or business."). Katz Ltd. became the trustee of the UAT in accordance with procedures set forth in the Confirmation Order and the NCFE Plan. On April 13, 2004, the Committee of Unsecured Creditors designated Katz Ltd. as the trustee of the UAT. *See* Notice of Designation of Unencumbered Assets Trustee under the Fourth Amended Joint Plan of Liquidation of National Century Financial Enterprises, Inc. and Its Debtor Subsidiaries (Doc. 2744 in Case No. 02–65235). On the April 30, 2004 effective date of the NCFE Plan, Katz Ltd. became the trustee of the UAT by appointment of the Court. *See* Confirmation Order ¶ D. 5(a) ("The appointment of the initial Trustees, as set forth in the notices filed by the Creditors' Committee and the Subcommittees with this Court, is approved as of the Effective Date."). The UAT retained Jones Day and Kairis to represent the UAT in its efforts to implement the NCFE Plan.

In the First State Court Action, Hampton–Stein alleges that Jones Day, Kairis, Katz Ltd. and Katz engaged in a conspiracy against her that began prior to the Petition Dates and continued thereafter. The First State Court Action was removed to the United States Bankruptcy Court for the Southern District of Florida under 28 U.S.C. §§ 1334(b) and 1452 and to the United States District Court for the Southern District of Florida ("Florida District Court") under 28 U.S.C. §§ 1332, 1442 and 1446 (collectively, "Florida Federal Courts.") At the time of the filing of the Prior Motion, competing motions were pending before the Florida Federal Courts, one by Hampton–Stein to remand the First State Court Action to the State Court and one by the Plaintiffs in this adversary proceeding to transfer venue of

the removed case to this Court. The Plaintiffs filed the Prior Motion on June 23, 2009. Finding consideration of the matter to be premature in light of the removal of the First State Court Action, on June 24, 2009, this Court entered an order (Doc. 8) deferring a ruling on the Prior Motion pending rulings by the Florida Federal Courts on the motions to remand and transfer venue.

On June 25, 2009, the day after this Court's order deferring its ruling on the Prior Motion and while the motions to remand and transfer were still pending before the Florida Federal Courts,[1] Hampton–Stein commenced the Second State Court Action, naming as defendants the Plaintiffs in this adversary proceeding as well as Charles Throckmorton (an attorney representing the UAT in this matter as well as in a bankruptcy proceeding in Florida involving Hampton–Stein's husband, Mitchell Stein) and Lisa Hill Fenning (who represents the UAT, Katz Ltd. and Katz in connection with this adversary proceeding). The Court will refer to these defendants in the Second State Court Action collectively as the "Florida Defendants."

The Second Florida Complaint does not assert any cause of action arising from activities that the Plaintiffs or the other Florida Defendants allegedly engaged in prior to the Petition Dates. Rather, the Second Florida Complaint is predicated entirely on actions that occurred after the Petition Dates. In count one of the Second Florida Complaint, Hampton–Stein seeks damages for the Plaintiffs having allegedly "committed extrinsic fraud by claiming—in at least three courtrooms and on at least five occasions—to have obtained a general ruling that Hampton–Stein's 2002 Settlement Agreement was

rejected but never serving Hampton–Stein as required by law and with intent and malice." Second Florida Complaint ¶ 24. In count two, Hampton–Stein alleges that the Florida Defendants violated the Florida Deceptive and Unfair Trade Practices Act by making "representations to the general public—including the judicial system—that the 2002 Settlement Agreement was lawfully rejected." Second Florida Complaint ¶ 33. In her third count, Hampton–Stein alleges that the Florida Defendants violated 28 U.S.C. § 2283 ("Anti–Injunction Act") by seeking an injunction from this Court against her First State Court Action. Hampton–Stein also asks the State Court for a declaratory judgment that the Florida Defendants violated the Anti–Injunction Act and requests an injunction enjoining future violations of the Anti–Injunction Act. *See* Second Florida Complaint, Prayer for Relief ¶¶ c, d, h & i. The Second Florida Complaint also seeks an order "setting aside the entire NCFE Bankruptcy proceeding...." Second Florida Complaint ¶ 30 & Prayer for Relief ¶ b.

The Plaintiffs filed the Motion to Enjoin on June 26, 2009. On June 29, 2009, the Court held a telephonic status conference with counsel for the Plaintiffs and counsel for Hampton–Stein. During the conference, the Court stated its intention to hold a hearing on the Motion to Enjoin on July 6, 2009. Counsel for Hampton–Stein advised the Court that the Second Florida Complaint sought to hold the Florida Defendants liable only for actions that allegedly took place after the Petition Dates. Counsel for both parties advised the Court that the hearing need not be evidentiary but rather need only address legal issues such as the *Barton Doctrine* and the Anti–

---

**1.** On July 5, 2009, the Florida District Court denied Hampton–Stein's motion to remand the First State Court Action to State Court

and, pursuant to 28 U.S.C. §§ 1404 and 1412, transferred the First State Court Action to this Court. *See* Doc. 14, Ex. A.

Injunction Act. On June 29, 2009, the Court issued and served notice electronically to counsel for Plaintiffs and counsel for Hampton–Stein that a telephonic hearing on the Motion to Enjoin would commence on July 6, 2009 at 2:00 p.m. On July 6, 2009, the Court held a hearing on the Motion to Enjoin.

### III. Legal Analysis

The Plaintiffs move the Court, pursuant to Rule 65 of the Federal Rules of Civil Procedure, as made applicable by Rule 7065 of the Federal Rules of Bankruptcy Procedure; 11 U.S.C. § 105(a); the All Writs Act and the *Barton Doctrine* to issue a temporary restraining order and preliminary injunction enjoining Hampton–Stein from pursuing the Second Florida Action. Under § 105(a) of the Bankruptcy Code, "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." The All Writs Act provides that "[t]he Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a).

■ As already noted, in the Second State Court Action, Hampton–Stein has raised the Anti–Injunction Act, which "prohibits federal courts from issuing injunctions to stay state court proceedings 'except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments.' 28 U.S.C. § 2283." *Parker v. Goodman (In re Parker)*, 499 F.3d 616, 626 (6th Cir.2007). However, "courts have widely affirmed that the expressly authorized exception to the Anti–Injunction Act includes injunctions authorized under the bankruptcy laws. [Section 105] includes the authority to enjoin litigants from pursuing actions pending in other courts that

threaten the integrity of a bankrupt's estate.... [Section] 105 provides an expressly authorized exception to the Anti–Injunction Act." *Id.* at 627–28 (citations and internal quotation marks omitted). *See also Allard v. Weitzman (In re DeLorean Motor Co.)*, 991 F.2d 1236, 1242 (6th Cir.1993) ("Section 105(a) contemplates injunctive relief in precisely those instances where parties are pursuing actions pending in other courts that threaten the integrity of a bankrupt's estate." (internal quotation marks omitted)); *In re DeLorean Motor Co.*, 876 F.2d 894 (table), 1989 WL 63256 at *3 n. 3 (6th Cir. June 14, 1989) ("Because either Bankruptcy Code § 105 or the All Writs Act authorizes the instant injunction, the Anti–Injunction Act, 28 U.S.C. § 2283 is inapplicable. Section 2283 expressly provides that a federal court injunction of a state court proceeding is permissible if it is 'necessary in aid' of a federal court's jurisdiction.").

■ When considering a preliminary injunction motion, the Court must balance four factors: "(1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury without the injunction; (3) whether issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by the issuance of the injunction." *Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.*, 511 F.3d 535, 542 (6th Cir.2007).

■ Addressing the likelihood-of-success-on-the-merits factor, the Sixth Circuit has stated:

The first factor to consider is whether the plaintiff has demonstrated a strong likelihood of success on the merits. A party is not required to prove his case in full at a preliminary injunction hearing. However, [i]n order to establish success

on the merits of a claim, a plaintiff must show more than a mere possibility of success. [I]t is ordinarily sufficient if the plaintiff has raised questions going to the merits so serious, substantial, difficult, and doubtful as to make them a fair ground for litigation and thus for more deliberate investigation.

*Id.* at 543 (citations and internal quotation marks omitted). The Court finds that the Plaintiffs have demonstrated a strong likelihood of success on the merits. They assert that an injunction of the Second State Court Action is appropriate under the *Barton Doctrine*, which provides that "leave of the [bankruptcy] forum must be obtained by any party wishing to institute an action in a [state] forum against a trustee, for acts done in the trustee's official capacity and within the trustee's authority as an officer of the court." *Heavrin v. Schilling (In re Triple S Rests., Inc.)*, 519 F.3d 575, 578 (6th Cir.2008) (internal quotation marks omitted). The doctrine "allows bankruptcy courts to retain greater control over administration of the estate." *Id.* Moreover, the rule extends to encompass acts by counsel or others performing as "the functional equivalent of a trustee," where they act "at the direction of the trustee and for the purpose of administering the estate or protecting its assets." *Allard*, 991 F.2d at 1241. Here, the Florida Defendants have a strong likelihood of success on the merits of showing a violation of the *Barton Doctrine*. In the Second State Court Action, Hampton–Stein seeks to hold the Florida Defendants liable for actions they took entirely postpetition, including their seeking an injunction in this Court. All of these actions appear to be within the Florida Defendants' official capacities and within their authority as officers of the Court. In their capacities as the Court-approved trustee of the UAT—a liquidating trust created by the NCFE Plan—Katz Ltd. and its principal,

Katz, have a strong argument that they are entitled to protection under the *Barton Doctrine*. *See Beck v. Fort James Corp. (In re Crown Vantage, Inc.)*, 421 F.3d 963, 973 (9th Cir.2005) ("[T]he fact that the officer involved is not a bankruptcy trustee, but rather a liquidating trustee, is of no moment.... Here, as part of a liquidating Chapter 11 reorganization proceeding, the bankruptcy court chose the mechanism of a liquidating trust to liquidate and distribute the assets of the estate.... Thus, the fact that the bankruptcy assets are now being liquidated through the vehicle of a liquidating trust with an appointed liquidating trustee does not prevent the application of the *Barton* doctrine." (citing *Allard*, 991 F.2d at 1241)). In addition, Jones Day, Kairis, Fenning and Throckmorton, as counsel to the UAT and Katz Ltd., have a strong argument that they are entitled to protection because the Sixth Circuit has expressly held that "counsel for trustee, court appointed officers who represent the estate, are the functional equivalent of a trustee...." *Allard*, 991 F.2d at 1241.

█ Although federal law provides that "[t]rustees, receivers or managers of any property, including debtors in possession, may be sued, without leave of the court appointing them, with respect to any of their acts or transactions in carrying on business connected with such property[,]" 28 U.S.C. § 959(a), this exception to the *Barton Doctrine* "does not apply to suits against the trustee for actions taken while administering the estate." *Allard*, 991 F.2d at 1241. But "[m]erely collecting, taking steps to preserve, and/or holding assets, as well as other aspects of administering and liquidating the estate, do not constitute carrying on business as that term has been judicially interpreted." *Id.* (internal quotation marks omitted). Accordingly, the Florida Defendants have a

strong argument that they are not operating a business, but rather are simply liquidating assets of the NCFE bankruptcy estates. For all of these reasons, the Plaintiffs have demonstrated a strong likelihood of success on the merits of their claims under the *Barton Doctrine*.

■ In analyzing the irreparable-injury factor, the Sixth Circuit has stated:

> After determining that a plaintiff has demonstrated a substantial likelihood of success on the merits of his underlying claim, the second factor that a court must consider when deciding whether to issue a preliminary injunction is whether the plaintiff will suffer irreparable injury without the injunction. A plaintiff's harm from the denial of a preliminary injunction is irreparable if it is not fully compensable by monetary damages. However, an injury is not fully compensable by money damages if the nature of the plaintiff's loss would make the damages difficult to calculate.

*Certified Restoration,* 511 F.3d at 550 (citations and internal quotation marks omitted). *See also Winter v. Natural Res. Def. Council, Inc.,* — U.S. —, 129 S.Ct. 365, 375–76, 172 L.Ed.2d 249 (2008) ("Our frequently reiterated standard requires plaintiffs seeking preliminary relief to demonstrate that irreparable injury is likely in the absence of an injunction. [A] preliminary injunction will not be issued simply to prevent the possibility of some remote future injury. Issuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with our characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." (citations and internal quotation marks omitted)).

The Court finds that the Plaintiffs have demonstrated that irreparable injury—injury that would not be fully compensable by monetary damages—is likely in the absence of a preliminary injunction. The Second State Court Action would require the Florida Defendants to defend the actions they have taken on behalf of the estates of the NCFE Debtors, whose bankruptcy cases remain pending. Thus, there is a risk that the Florida Defendants will be distracted by the Second State Court Action from their duties to the creditors of the NCFE Debtors' estates. In addition, if the State Court were to grant her what she seeks, Hampton–Stein's Second State Court Action could lead to "an order setting aside the entire NCFE Bankruptcy proceeding...." Second Florida Complaint ¶ 30. By asking a court other than this one to revoke the NCFE Plan, Hampton–Stein threatens to directly contravene the Confirmation Order and transactions effectuated thereunder. Such harm would be an affront to this Court's jurisdiction and would not be compensable with monetary damages. *See Henkel v. Lickman (In re Lickman),* 282 B.R. 709, 722 (Bankr.M.D.Fla.2002) ("The action of the defendants ... attacks the core of this court's jurisdiction.... Unless this court acts to restrain such action, irreparable harm will occur to the plaintiff and to the bankruptcy policy of the United States.").

■ The Court balances this irreparable injury if the injunction is not issued against the fact that the issuance of the injunction will not cause substantial harm to others. The only plaintiff in the Second State Court Action is Hampton–Stein. The issuance of a preliminary injunction will not harm Hampton–Stein at all because it will not invalidate any rights she may have but will only delay them pending a final determination in this adversary proceeding. In addition, if Hampton–Stein believes her claims have merit, she may refile her suit in this Court or ask this

Court for leave to bring her claims in another court.

■ Finally, the Court concludes that the public interest would be served by the issuance of a preliminary injunction. *See Henkel v. Lickman (In re Lickman)*, 286 B.R. 821, 832 (Bankr.M.D.Fla.2002) ("[The preliminary injunction] protects the integrity of the debtor's bankruptcy estate and the bankruptcy process.... The court concludes, therefore, that the plaintiff has established that the balancing of public policy is in favor of furthering and supporting bankruptcy policy at this time."). The public interest is served by allowing bankruptcy courts to retain control over the administration of the bankruptcy estates. Preliminary injunctive relief here will allow the Court to retain control over the administration of NCFE Debtors' bankruptcy estates.

## IV.  Conclusion

For the foregoing reasons, the Plaintiffs' Motion is **GRANTED**. The Court hereby enjoins Hampton–Stein from prosecuting the Second State Court Action.

**IT IS SO ORDERED.**