In re NATIONAL CENTURY FI-
NANCIAL ENTERPRISES,
INC., et al., Debtors.

Unencumbered Assets Trust, Erwin I.
Katz, Ltd., Erwin I. Katz, Jones Day,
and Matthew A. Kairis, Plaintiffs,

v.

Tracey Hampton–Stein, Defendant.

Bankruptcy No. 02–65235.
Adversary No. 09–2281.

United States Bankruptcy Court,
S.D. Ohio,
Eastern Division at Columbus.

March 30, 2010.

Leon Friedberg, Carlile Patchen & Murphy LLP, J. Kevin Cogan, Matthew C. Corcoran, Shawn J. Organ, Columbus, OH, Lisa Hill Fenning, Dewey & Leboeuf LLP, Los Angeles, CA, for Plaintiffs.

David M. Martin, Springfield, OH, for Defendant.

### MEMORANDUM OPINION AND ORDER ON PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT, REQUEST FOR DAMAGES HEARING, AND REQUEST FOR PERMANENT INJUNCTION

JOHN E. HOFFMAN JR., Bankruptcy Judge.

### I. Introduction

This adversary proceeding arises in the Chapter 11 cases of National Century Financial Enterprises, Inc. ("NCFE") and its affiliated debtors (collectively, "NCFE Debtors"). The plaintiffs ("Trust Parties")[1] are responsible for the liquidation of the unencumbered assets of the NCFE Debtors' estates. The defendant, Tracey Hampton–Stein ("Hampton–Stein"), is the plaintiff in two lawsuits ("State Court Actions") she filed against the Trust Parties (other than the UAT) in the Circuit Court for the Fifteenth Judicial Circuit, Palm Beach County, Florida ("State Court"). The Trust Parties contend that Hampton–Stein's commencement of the State Court Actions without leave of this Court violated the doctrine set forth in *Barton v. Barbour*, 104 U.S. 126, 26 L.Ed. 672 (1881) ("Barton Doctrine"), under which "leave of the appointing forum must be obtained by any party wishing to institute an action in a non-appointing forum against a trustee, for acts done in the trustee's official capacity and within the trustee's authority as an officer of the court." *Allard v. Weitzman (In re DeLorean Motor Co.)*, 991 F.2d 1236, 1240 (6th Cir.1993).

Upon filing their original complaint, the Trust Parties requested a preliminary injunction of Hampton–Stein's first lawsuit ("First State Court Action"). *See* Doc. 4. The Court deferred ruling on that request, *see* Doc. 8, based on a then-pending motion by the Trust Parties to transfer the First State Court Action to this Court; the United States District Court for the Southern District of Florida ("Florida District Court") ultimately granted the motion to transfer. *See Hampton–Stein v. Katz*, 2009 WL 1916621 at *3 (S.D.Fla. July 5, 2009).[2] After the Court deferred ruling on

---

**1.** The Trust Parties are the Unencumbered Assets Trust ("UAT"); its trustee, Erwin I. Katz, Ltd. ("Katz Ltd."); Katz Ltd.'s principal, Erwin I. Katz ("Katz"); and the UAT's counsel, Jones Day and Matthew A. Kairis ("Kairis").

**2.** After the transfer, Hampton–Stein filed an amended complaint and a motion to transfer the proceeding back to the State Court (Docs. 25 and 27, respectively, in Adv. Pro. No. 09–2326). On September 24, 2009, however, Hampton–Stein mooted her request to transfer by filing a motion to dismiss the adversary

the request to enjoin the First State Court Action, Hampton–Stein filed a second lawsuit in the State Court ("Second State Court Action"). In response, the Trust Parties filed an amended complaint (Doc. 9) and a motion seeking a preliminary injunction of the Second State Court Action. *See* Doc. 10. The Court granted the Trust Parties' motion to preliminarily enjoin the Second State Court Action because, among other things, that action had not been removed to the Florida District Court (so that there were no pending motions to transfer or remand it), the causes of action set forth therein arose entirely from postpetition events, and the Second State Court Action sought "an order setting aside the entire NCFE Bankruptcy proceeding...." *Unencumbered Assets Trust v. Hampton–Stein (In re Nat'l Century Fin. Enters., Inc.),* 407 B.R. 895, 899 (Bankr.S.D.Ohio 2009) (internal quotation marks omitted).

The matter presently before the Court is a motion filed by the Trust Parties requesting (1) summary judgment on the issue of Hampton–Stein's liability for the alleged violations of the Barton Doctrine, (2) a hearing on the issue of the Trust Parties' damages and (3) a permanent injunction of the Second State Court Action ("Motion") (Doc. 23). In response to the Motion, Hampton–Stein alleges that the Trust Parties were acting outside the scope of their authority when they took the actions that are the subject of the State Court Actions, so that the Barton Doctrine does not apply. Yet she contends that she needs to conduct discovery to support her allegations that the Trust Parties were acting outside the scope of their authority.

As explained below, a presumption exists under Sixth Circuit law that the Trust Parties were acting within the scope of their authority and, unless Hampton–Stein possessed information rebutting that presumption when she commenced the State Court Actions, she was required by the Barton Doctrine either to file those actions here or obtain leave from this Court to commence those actions elsewhere. She did neither. The Court, therefore, concludes that Hampton–Stein violated the Barton Doctrine by filing the State Court Actions. The Court will enter an order permanently enjoining Hampton–Stein from pursuing the still-pending Second State Court Action in any court other than this Court and will enter a separate pretrial order on the issue of the Trust Parties' damages.[3]

## II.   Jurisdiction

The Court has jurisdiction to hear and determine this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the general order of reference entered in this district. This is a core proceeding. *See* 28 U.S.C. § 157(b)(2)(A) and (O).

## III.   Background

### A.   Events Occurring Prior to the Commencement of the State Court Actions

By the time it commenced a voluntary Chapter 11 case on November 18, 2002 ("Petition Date"), NCFE had grown into "one of the country's largest providers of healthcare accounts receivable financing." *Nat'l Century Fin. Enters., Inc. v. Gulf Ins. Co. (In re Nat'l Century Fin. Enters., Inc.),* 2005 WL 6242169 at * 1 (Bankr.

proceeding. *See* Doc. 35 in Adv. Pro. No. 09–2326.

**3.**   This memorandum opinion is not intended to limit any rights Hampton–Stein has to conduct discovery in connection with the issue of the Trust Parties' alleged damages or to pursue in this Court any causes of action she may have against the Trust Parties.

S.D.Ohio Jan.10, 2005).[4] Among the hundreds of healthcare providers financed by NCFE were companies affiliated with Hampton–Stein, her husband, Mitchell Stein ("Stein"), and a company known as SWAB Financial, LLC (collectively, "Stein Parties"). Pre-bankruptcy litigation related to the financing of the Stein Parties' companies resulted in a settlement agreement, dated August 15, 2002 ("Settlement Agreement"), among the Stein Parties, NCFE and certain of its affiliates and principals, as well as numerous other parties.[5] Pursuant to the Settlement Agreement, NCFE paid $3.5 million to Stein as the designee of the Stein Parties. The Settlement Agreement contained mutual releases and covenants not to sue as well as confidentiality and non-disparagement provisions. None of the Trust Parties is a signatory to the Settlement Agreement.

In May 2002, Jones Day and Kairis began representing NCFE and affiliated parties in certain prepetition litigation matters—including the litigation ultimately resolved by the Settlement Agreement. *See* Settlement Agreement ¶ 10 ("The NCFE Parties represent and warrant that neither the Jones Day firm nor Matthew Kairis represents any party appertaining or relating to the parties to this SETTLEMENT AGREEMENT with the exception of the NCFE Parties."). After the Petition Date, Jones Day became bankruptcy counsel to the NCFE Debtors pursuant to an order of the Court. *See* Doc. 421 in Case No. 02–65235.

On April 16, 2004, Judge Donald E. Calhoun, Jr., who was then presiding over the NCFE Debtors' cases, entered the Order Confirming the Fourth Amended Joint Plan of Liquidation of National Century Financial Enterprises, Inc. and Its Debtor Subsidiaries, as Modified ("Confirmation Order"). *See* Doc. No. 2789 in Case No. 02–65235. The plan of liquidation confirmed by that order ("NCFE Plan"), a copy of which is attached to the Confirmation Order, created the UAT solely for the purpose of liquidating substantially all of the NCFE Debtors' unencumbered assets. *See* NCFE Plan § IV.D.2 ("The [UAT] shall be established for the sole purpose of liquidating the Assets transferred to it in furtherance of the [NCFE] Plan for the sole benefit of the holders of beneficial interests in the [UAT], with no objective to continue or engage in the conduct of trade or business."). The Committee of Unsecured Creditors designated Katz Ltd. as the trustee of the UAT. *See* Notice of Designation of Unencumbered Assets Trustee under the Fourth Amended Joint Plan of Liquidation of National Century Financial Enterprises, Inc. and Its Debtor Subsidiaries. *See* Doc. 2744 in Case No. 02–65235. On the April 30, 2004 effective date of the NCFE Plan ("Effective Date"), Katz Ltd. became the trustee of the UAT by appointment of the Court. *See* Confirmation Order ¶ D.5(a) ("The appointment of the initial Trustees, as set forth in the notices filed by the Creditors' Committee

---

4. NCFE also was facing allegations that "a great deal of accounting fraud [had been] committed by NCFE employees, directors and officers" since the mid–1990s. *Id.* at *1. Those allegations ultimately proved to be true. *See United States v. Poulsen,* 568 F.Supp.2d 885, 888–89 (S.D.Ohio 2008) ("At the start of the new millennium, [NCFE] appeared to be a thriving financing company with a national reputation as a leader in its field. But as it turned out, that reputation was built on smoke and mirrors. When nearly a decade of

fraud perpetrated by the company finally came to light in 2002, public investigations quickly followed, culminating in criminal charges brought against eleven owners and senior executives.").

5. The Settlement Agreement is attached as Exhibit B–2 to the Affidavit of Joseph M. Witalec ("Witalec Affidavit"), which is attached as Exhibit 1 to the Motion.

and the Subcommittees with this Court, is approved as of the Effective Date."). On the Effective Date, substantially all of the NCFE Debtors' unencumbered assets were assigned and transferred to the UAT pursuant to 11 U.S.C. § 1123(a). *See* Confirmation Order ¶ D.2.a.; NCFE Plan § IV.D.4.a. After the Effective Date, the UAT retained Jones Day, including Kairis, to represent it in its efforts to recover assets and pursue litigation on behalf of the creditors of the bankruptcy estates of the NCFE Debtors. *See* Witalec Affidavit ¶ 15.

On November 17, 2004, the UAT and Katz, Ltd.—acting through their counsel, Jones Day and Kairis—commenced Adversary Proceeding No. 04–2609 against Hampton–Stein, Stein and other parties ("Preference Action") in an effort to recover the $3.5 million that NCFE had paid under the Settlement Agreement. On August 31, 2005, the UAT agreed to dismiss the Preference Action against Hampton–Stein, without prejudice, in exchange for her representation that she did not receive any of the $3.5 million, subject to a reservation of the UAT's right to reinstate the complaint should it later be determined that her representation was untrue. *See* Docs. 133 and 134 in Adv. Pro No. 04–2609. The UAT continued to litigate the Preference Action against Stein and SWAB and, at some point, the Trust Parties came to believe that Stein and SWAB had agreed to settle the Preference Action by returning the full $3.5 million pursuant to an installment payment plan, subject to certain discounts for early payment. *See* Witalec Affidavit ¶ 19. Because Stein and SWAB disagreed with that view and refused to finalize and sign settlement documents, the UAT filed a motion to enforce the settlement it believed had been reached. *See Id.* ¶ 20. Judge Calhoun ruled in favor of the UAT. *See* Docs. 160 and 161 in Adv. Pro. No. 04–2609. After Stein and SWAB failed to post an adequate bond for a stay pending appeal, Judge Calhoun entered an order (attached as Exhibit M to the Witalec Affidavit) granting the UAT's request to register the judgment in California,[6] where the Trust Parties believed Stein and SWAB held the majority of their assets. Having registered the judgment in California, the UAT filed a receivership action ("Receivership Action") in an attempt to collect the $3.5 million from Stein and SWAB. On February 2, 2009, Kairis filed a declaration ("Kairis Declaration") in the Receivership Action alleging, among other things, that "[a]ll assets that have been identified through the [UAT's] investigation are in the name of Stein's wife, Tracey Hampton–Stein."[7] *See* Kairis Declaration ¶ 23.

## B. The State Court Actions

On April 22, 2009, Hampton–Stein initiated the First State Court Action.[8] She alleged that a "conspiracy against [her] commenced in the late 1990s" and that "[the Trust Parties]—for motives and rea-

---

6. On appeal, the United States District Court for the Southern District of Ohio affirmed the $3.5 million judgment. *See* Opinion and Order attached as Exhibit N to the Witalec Affidavit. The judgment is currently on appeal to the United States Court of Appeals for the Sixth Circuit, where it is stayed under § 362 due to a bankruptcy filing by Stein in the United States Bankruptcy Court for the Southern District of Florida.

7. The Kairis Declaration is attached as Exhibit O to the Witalec Affidavit.

8. The complaint commencing the First State Court Action ("First Complaint") is attached as Exhibit A to the Witalec Affidavit.

sons currently unknown to [her]—continued the conspiracy from the time they became involved with NCFE,[9] continuing to the date of filing this lawsuit." *See* First Complaint ¶ 21.[10] According to Hampton–Stein, the conspiracy involves the "theft by NCFE of [her] assets," *id.* ¶ 22, and "NCFE's misconduct on a host of activities that ultimately led to the filing of a whistleblower action by [her family trust, which was] settled on August 15, 2002 [by the Settlement Agreement]." *Id.* ¶¶ 22–23. Hampton–Stein describes the purpose of the Settlement Agreement from her perspective as follows:

> Kairis represented NCFE and its principals in the "whistleblower" action, drafted the [Settlement Agreement], and interacted with [Hampton–Stein] and her lawyers in completing the [Settlement Agreement]. In the [Settlement Agreement], NCFE made numerous contractual commitments to [Hampton–Stein] and others to induce [her] to provide ongoing consideration to NCFE for NCFE to perfect its interest in a $100,000,000.00 (one hundred million dollar) asset previously purchased from [Hampton–Stein] by NCFE. Had [Hampton–Stein] known NCFE did not intend to honor the [Settlement Agreement], [Hampton–Stein] would have never entered into the agreement. [Hampton–Stein's] sole purpose in entering into the [Settlement Agreement] was *to be done with Defendants NCFE and Kairis, whom [Hampton–Stein] did not wish to be involved in any further.* *Id.* ¶¶ 24–27.

In addition to the allegations relating to the formation of the Settlement Agreement, which was finalized before the Petition Date, Hampton–Stein made certain allegations in the First State Court Action that clearly relate only to events that occurred after the Petition Date. In particular, she asserted causes of action for (1) malicious prosecution based on the filing of the Preference Action and (2) breach of contract, invasion of privacy, intentional infliction of emotional distress, slander of title and tortious interference with business relationships, all based on the Trust Parties' allegedly making statements in connection with the Preference Action and the Receivership Action (*e.g.*, by means of the Kairis Declaration) in contravention of the release, covenant-not-to-sue, non-disparagement and confidentiality provisions of the Settlement Agreement.

The Trust Parties removed the First State Court Action to the Florida District Court. Hampton–Stein argued before the Florida District Court that the Barton Doctrine did not apply; the Florida District Court held that this Court is in the best position to evaluate that issue in the first instance and, as discussed above, on July 5, 2009, denied Hampton–Stein's motion to remand the First State Court Action and transferred that action to this Court. *See Hampton–Stein*, 2009 WL 1916621 at *3.

In the meantime, on June 25, 2009, Hampton–Stein commenced the Second State Court Action,[11] in which she seeks to

---

9. In the State Court Actions, Hampton–Stein defines "NCFE" to include Katz Ltd., the UAT and NCFE.

10. As described above, the evidence before the Court demonstrates that Jones Day and Kairis became involved with NCFE prior to the Petition Date and that the UAT, Katz and Katz Ltd. became involved with NCFE after the Petition Date.

11. The complaint commencing the Second State Court Action ("Second Complaint") is attached as Exhibit B to the Witalec Affidavit. In the Second State Court Action, Hampton–Stein added as defendants attorney Lisa Hill Fenning, who represents the UAT in the Receivership Action, and attorney Charles Throckmorton, who represents the UAT as a creditor in Stein's bankruptcy case and the

hold the Trust Parties liable only for actions they allegedly took after the Petition Date.[12] She alleges that the Trust Parties obtained confirmation of the NCFE Plan through fraud—that is, by not serving her with notice of the effect of the NCFE Plan on the Settlement Agreement—while asserting in various courts that the Settlement Agreement had not been assumed pursuant to the Plan. She also asserts violations of the Florida Deceptive and Unfair Trade Practices Act based on alleged representations to the public and various courts that the Settlement Agreement has not been assumed, *see* Second Complaint at 6, and alleges violations of 28 U.S.C. § 2283 ("Anti–Injunction Act") based on the Trust Parties' having sought an injunction of the First State Court Action from this Court.

## IV. Arguments of the Parties

In the Motion, the Trust Parties contend that Hampton–Stein has repeatedly violated the Barton Doctrine, that they are entitled to damages for those violations and that the Second State Court Action should be permanently enjoined. In her response ("Response") (Doc. 25), Hampton–Stein argues that the Motion is premature. Response at 3. Pointing out that the Barton Doctrine would protect the Trust Parties only if they were "act[ing] at the direction of the trustee and for the purpose of administering the estate or protecting its assets," *Allard*, 991 F.2d at 1241, she questions whether that was the case:

That question is before this Court. Were [the Trust Parties] acting at the

direction of the Trustee and for the purpose of administering the estate or protecting its assets? [Hampton–Stein] learned of the alleged wrongful acts of [the Trust Parties] subsequent to the filing of the second Florida action and the amended adversarial proceeding in this Court. By virtue of this Court's preliminary injunction, [Hampton–Stein] has not had the opportunity to conduct discovery to determine whether the actions complained of are in fact protected under *Barton* as claimed by [the Trust Parties].

Response at 5.

Hampton–Stein raises several other questions in the Response, including "[w]hat exactly was the motive for the [Trust Parties] to take the actions taken against [Hampton–Stein]?" and "[w]as the intent of the [Trust Parties] herein to harass and or humiliate [Hampton–Stein]?" *Id.* at 8. She contends that she has the right to conduct discovery—depositions of Katz, Kairis and the custodians of the records of the UAT and Jones Day—in order to elicit proof to help answer those questions. *See id.* According to the Response, she "expects these noticed depositions to establish that the Estate had no *knowledge* as to the conduct of Jones Day *vis-à-vis* this Defendant...." *Id.* She also expects the depositions to establish "that either (a) Jones Day defrauded the Estate as well as this Defendant or (b) Jones Day and the Estate conspired to allow Jones Day to dominate, control and act as alter ego for the Estate with an intention of violating

Trust Parties in the First State Court Action. *See* Witalec Affidavit ¶¶ 24, 25 & 32.

12. On June 29, 2009, the Court held a telephonic status conference with counsel for the Trust Parties and Jacob Armpriester, counsel to Hampton–Stein. During the conference, Mr. Armpriester conceded that, as is apparent to the Court, the Second State Court Action

seeks to hold the Trust Parties liable only for actions that allegedly occurred after the Petition Date. Mr. Armpriester later filed a motion to withdraw as counsel to Hampton–Stein (Doc. 31); that motion remains pending because Armpriester has not uploaded an order granting it in accordance with the Court's Local Bankruptcy Rules.

the Plan of Reorganization in this bankruptcy." *Id.* In support of her request for discovery under Rule 56(f) of the Federal Rules of Civil Procedure ("Civil Rule(s)"), she has submitted an affidavit ("Hampton–Stein Affidavit") in which she states, among other things, as follows:

> Subsequent to the [filing of the First State Court Action], I became aware of certain facts and circumstances regarding the allegations contained therein. . . . It is my understanding that *"Barton"* protection is not afforded to counsel who were **not** acting at the direction of the trustee or—worse—were committing a fraud on the Estate. Noticeably absent from the Plaintiffs' Motion for Partial Summary Judgment is an affidavit from the UAT or its Trustee that these professionals were in fact acting at UAT's direction in violating the terms of the August, 2002 Settlement Agreement and committing the acts complained of. In the event these legal professionals acted outside the scope of their agency and **not** as counsel for the Trustee (UAT) or—worse—without the UAT's consent or ratification, there is little dispute that these lawyers would not be entitled to protection under *Barton.* In order for counsel to properly represent my interests and defend me against Plaintiffs' Motion for Partial Summary Judgment, it is necessary for my counsel to take the depositions of Matthew A. Kairis, Erwin I. Katz, the records custodian for the Unencumbered Assets Trust and the records custodian for Jones Day. It is essential to the establishment of my defenses and the piercing of Plaintiffs' claims of protection pursuant to *Barton* that I be permitted to conduct this discovery.

Hampton–Stein Affidavit at 2–3.

In their reply ("Reply") (Doc. 30), the Trust Parties argue that there is " '[a] presumption in favor of the trustee, counsel, or other bankruptcy official that they were acting within the scope of their duties' " and that "[i]t was Hampton–Stein's burden alone to have evidence rebutting this presumption before filing her lawsuits." Reply at 3 (citing *Lowenbraun v. Canary (In re Lowenbraun),* 453 F.3d 314, 322 (6th Cir.2006)). Thus, they contend that the discovery Hampton–Stein seeks is irrelevant to the issue of her liability because controlling law required her to have evidence when she filed the State Court Actions that the Trust Parties were acting outside the scope of their authority. *See id.* at 1.

## V. Legal Analysis

### A. Summary Judgment Standard

#### 1. In General

The Trust Parties move the Court for summary judgment pursuant to Civil Rule 56(c), made applicable in this adversary proceeding by Rule 7056 of the Federal Rules of Bankruptcy Procedure. Under Civil Rule 56(c), summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *see also Novak v. MetroHealth Med. Ctr.,* 503 F.3d 572, 577 (6th Cir.2007). In reviewing a motion for summary judgment, the Court views the evidence, all facts, and any inferences drawn therefrom, in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Novak,* 503 F.3d at 577; *Skowronek v. Am. S.S. Co.,* 505 F.3d 482, 484 (6th Cir.2007) (the court "must draw all reasonable inferences in favor of the nonmoving party").

" '[A]s to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under governing law will properly preclude the entry of summary judgment.' " *Niecko v. Emro Mktg. Co.*, 973 F.2d 1296, 1304 (6th Cir. 1992) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). "Entry of summary judgment is appropriate 'against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.' " *Novak*, 503 F.3d at 577 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)); *see also Ransier v. Standard Fed. Bank (In re Collins)*, 292 B.R. 842, 845 (Bankr. S.D.Ohio 2003).

### 2. Partial Summary Judgment as to Liability

The Trust Parties also rely on Civil Rule 56(d)(2), under which "[a]n interlocutory summary judgment may be rendered on liability alone, even if there is a genuine issue on the amount of damages." Fed. R.Civ.P. 56(d)(2). *See also Park v. Chang (In re Park)*, 271 Fed.Appx. 398, 401 n. 11 (5th Cir. Mar.25, 2008) (unpublished) ("The bankruptcy court was entitled to grant a partial summary judgment on the issue of liability even though the issue of damages was not resolved."); *In re Rock 49th Rest. Corp.*, 2009 WL 4892544 at *2 n. 1, *5 (Bankr.S.D.N.Y. Dec.10, 2009) (granting interlocutory summary judgment on liability and providing that "if necessary, [the parties may] set this matter down for a further hearing on the open damages issues").

### 3. Summary Judgment and Discovery

Under Civil Rule 56(e)(2), Hampton–Stein "may not rely merely on allega- tions or denials in [her] own pleading; rather, [her] response must—by affidavits or as otherwise provided in this rule—set out specific facts showing a genuine issue for trial." Fed.R.Civ.P. 56(e)(2). In lieu of alleging specific facts showing a genuine issue for trial, Hampton–Stein relies on Civil Rule 56(f), which states:

> **When Affidavits Are Unavailable.** If a party opposing the motion shows by affidavit that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:
>
> (1) deny the motion;
>
> (2) order a continuance to enable affidavits to be obtained, depositions to be taken, or other discovery to be undertaken; or
>
> (3) issue any other just order.

Fed.R.Civ.P. 56(f). This rules requires "that summary judgment be refused where the nonmoving party has not had the opportunity to discover information that is essential to his opposition." *Anderson*, 477 U.S. at 250 n. 5, 106 S.Ct. 2505. But "[a] party who seeks to invoke the protection of Rule 56(f) must carry the burden of showing how postponement of a ruling on the motion will enable him, by discovery or other means, to rebut the movant's showing of the absence of a genuine issue of fact. Mere speculation is not enough." (*Dukes v. Bolden*, 958 F.2d 371 (table), 1992 WL 51471 at *3 (6th Cir. Mar.18, 1992) (citations and internal quotation marks omitted)). In other words, Civil Rule 56(f) "is not a shield that can be raised to block a motion for summary judgment without even the slightest showing by the opposing party that his opposition is meritorious." *Lewis v. ACB Bus. Servs., Inc.*, 135 F.3d 389, 409 (6th Cir. 1998) (internal quotation marks omitted).

## B. The Trust Parties are Entitled to Partial Summary Judgment as to Liability.

■ Under the Barton Doctrine, "leave of the appointing forum must be obtained by any party wishing to institute an action in a non-appointing forum against a trustee, for acts done in the trustee's official capacity and within the trustee's authority as an officer of the court." *Allard*, 991 F.2d at 1240. As the Court-approved trustee of a liquidating trust, Katz Ltd. and its principal, Katz, are entitled to protection under the Barton Doctrine. *See Beck v. Fort James Corp. (In re Crown Vantage, Inc.)*, 421 F.3d 963, 973 (9th Cir.2005) ("[T]he fact that the officer involved is not a bankruptcy trustee, but rather a liquidating trustee, is of no moment. . . . Here, as part of a liquidating Chapter 11 reorganization proceeding, the bankruptcy court chose the mechanism of a liquidating trust to liquidate and distribute the assets of the estate. . . . Thus, the fact that the bankruptcy assets are now being liquidated through the vehicle of a liquidating trust with an appointed liquidating trustee does not prevent the application of the *Barton* doctrine." (citing *Allard*, 991 F.2d at 1241)). And Jones Day, Kairis, Fenning and Throckmorton, as counsel to the UAT and Katz Ltd., are afforded protection because the doctrine protects attorneys serving as "the functional equivalent of a trustee," when they "act at the direction of the trustee and for the purpose of administering the estate or protecting its assets." *Allard*, 991 F.2d at 1241.

■ Here, Hampton–Stein argues that the Trust Parties are not protected by the Barton Doctrine because they have not presented an affidavit or other evidence that they were acting within the scope of their authority. Yet, under controlling Sixth Circuit authority, the Barton Doc-trine gives rise to a presumption in favor of trustees and their counsel that they were so acting:

[The bankruptcy court, in a decision affirmed by the district court in *Kirk v. Hendon (In re Heinsohn)*, 247 B.R. 237 (E.D.Tenn.2000) ], "presume[d that] acts were a part of the trustee's duties unless Plaintiff initially alleges at the outset facts demonstrating otherwise." 247 B.R. at 246. This presumption strikes us as persuasive. . . . A presumption in favor of the trustee, counsel, or other bankruptcy official that they were acting within the scope of their duties prevents a plaintiff . . . from making unsupported allegations in an attempt to defeat Congress's goal of providing exclusive federal jurisdiction over bankruptcy matters.

*Lowenbraun*, 453 F.3d at 322 (citation omitted). *See also Heavrin v. Schilling*, 2007 WL 952077 at *1 (W.D.Ky. Mar.26, 2007) ("The thrust and purpose of the Barton Doctrine is to allow the Bankruptcy Court to determine whether the Trustee may be sued and, thus, better control the administration of the bankruptcy estate. Heavrin suggests that merely making allegations of actions outside the Trustee's scope of authority is sufficient to defeat federal jurisdiction. This Court disagrees."), aff'd, 519 F.3d 575 (6th Cir. 2008). Also, a plaintiff can rebut the presumption that trustees and their counsel were acting within the scope of their authority—and thus avoid violating the Barton Doctrine—only if she " 'initially alleges at the outset facts demonstrating otherwise.' " *Lowenbraun*, 453 F.3d at 322 (quoting *Heinsohn*, 247 B.R. at 246); *see also See Katz v. Kucej (In re Biebel)*, 2009 WL 1451637 at *5 (Bankr.D.Conn. May 20, 2009) ("Facts sufficient to support the allegation that the trustee exceeded the scope of [his or her authority] must be pled by the plaintiff at the outset or the *Barton*

Doctrine will bar the suit in the nonappointing court.").[13] Hampton–Stein did not do so.

That is not to say that a party can never sue a trustee or its counsel in a forum other than the presiding bankruptcy court. To the extent a litigant suing a trustee or its counsel grounds his or her causes of action entirely on events that occurred prior to the commencement of bankruptcy, for example, such litigation would not violate the Barton Doctrine. *See In re J.S. II, L.L.C.,* 389 B.R. 570, 584 (Bankr. N.D.Ill.2008) ("[T]he Barton doctrine would be inapplicable for events occurring [prepetition]."). And a litigant could safely assert causes of action based entirely on allegations that " 'by mistake or wrongfully, [the trustee or counsel took] possession of property belonging to [her]. . . .' " *Teton Millwork Sales v. Schlossberg,* 311 Fed. Appx. 145, 148 (10th Cir.2009) (unpublished) (quoting *Barton,* 104 U.S. at 134). The causes of action asserted by Hampton–Stein, however, were not so limited. Rather, she crossed the divide of the Petition Date and sued the Trust Parties for actions presumed to be within the scope of their authority. And her allegations of conspiracy and malicious intent fail to overcome the presumption that the Trust Parties were acting within the scope of their authority where, as here, "[s]tripped of their rhetoric, each of these [allegations] asserts or describes actions that were taken by the [Trust Parties] in the bankruptcy case and/or in the course of administering the bankruptcy estate." *In re Byrd,* 2007 WL 1485441 at * 10 (Bankr.D.Md. May 18, 2007), *aff'd,* 417 B.R. 320 (D.Md. 2008), *aff'd,* 331 Fed.Appx. 212 (4th Cir. 2009) (unpublished). Thus, "the claims fall squarely within the Barton Doctrine in that they assert causes of action based on actions taken by bankruptcy professionals in the course of administering the estate." *Id.* Indeed, "[c]ourts have not hesitated to apply the Barton Doctrine to [conspiracy] claims where the claims are based on actions taken by the bankruptcy professionals in the course of administering the bankruptcy estate." *Id. See also Muratore v. Darr,* 375 F.3d 140, 147 (1st Cir. 2004) (holding that the Barton Doctrine applied despite allegations of abuse of process and improper ulterior purpose); *Allard,* 991 F.2d at 1241 (holding that the Barton Doctrine applied to claims against the trustee's counsel for abuse of process and malicious prosecution).

■ In response to the seemingly insurmountable obstacle presented by the Barton Doctrine, Hampton–Stein argues that she could manage to rebut the presumption imposed by that doctrine if only she were afforded the opportunity to conduct discovery pursuant to Civil Rule 56(f). But Hampton–Stein did not allege at the outset (*i.e.,* when she commenced the State Court Actions) any facts demonstrating that the Trust Parties were acting outside the scope of their authority. And nothing she could discover now would alter what she knew—or, more importantly, did not know—when she sued the Trust Parties in the State Court. As a result, no amount of discovery could possibly change the Court's decision that Hampton–Stein violated the Barton Doctrine, and Civil Rule 56(f) thus presents no impediment to the Court's issuance of summary judgment as to her liability. *See Thornton v. Graphic Commc'ns Conference of Int'l Bhd. of Teamsters Supplemental Ret. & Disability Fund,* 566 F.3d 597, 618 (6th Cir.2009) ("We agree with the district court's conclusion that Thornton's desired discovery would not affect the outcome of this case.

---

13. The individual surnamed Katz who was involved in the *Biebel* case was a Chapter 7 trustee named Barbara H. Katz, not Katz Ltd. or Katz.

Therefore, we find the district court did not abuse its discretion in denying Thornton's Rule 56(f) motion.").

To be clear, the issue before the Court is not whether Hampton–Stein has causes of action against the Trust Parties; rather, the issue is whether the State Court was the appropriate forum in which to bring those causes of action. *See Biebel,* 2009 WL 1451637 at *6 (stating that the court's "analysis determines *where* the Trustee may be sued *(i.e.,* in this court only), not *whether* she may be sued"). For the reasons set forth above, the Court concludes that the State Court was not an appropriate forum and that Hampton–Stein violated the Barton Doctrine by commencing the State Court Actions there rather than here.

## C. The Trust Parties are Entitled to a Permanent Injunction of the Second State Court Action.

■ The Trust Parties do not seek an injunction of the First State Court Action because that action has been transferred to this Court.[14] The Trust Parties do, however, seek a permanent injunction of the Second State Court Action, which remains pending in the State Court.

■ Having already preliminarily enjoined the Second State Court Action, the Court concludes that the Trust Parties are now entitled to a permanent injunction.[15] "The standard for granting a permanent injunction is essentially the same as the standard for granting a preliminary injunction, with the exception that the Plaintiff must show actual success on the merits rather than a mere likelihood of success." *State of Ohio E.P.A. v. U.S. Dep't of Labor,* 121 F.Supp.2d 1155, 1168 (S.D.Ohio 2000). The Trust Parties have established that not granting the injunction would cause them irreparable injury not fully compensable by monetary damages; they also have established that granting the injunction would serve the public interest while not causing substantial harm to third parties. *See Nat'l Century,* 407 B.R. at 900–03.[16] For the reasons set forth above,

14. In addition, because the Trust Parties did not file an answer or a motion for summary judgment in Adv. Pro. No. 09–2326, Hampton–Stein's motion to dismiss served as a notice of dismissal and the adversary proceeding therefore has been dismissed without prejudice. *See Williams v. Ezell,* 531 F.2d 1261, 1263 (5th Cir.1976) ("Although Rule 41(a)(1) was not cited in the Motion for Dismissal, there is no question that plaintiffs were acting pursuant to it. That it was styled a 'Motion for Dismissal' rather than a 'Notice of Dismissal' is, in our opinion, a distinction without a difference."); *Horton v. Trans World Airlines Corp.,* 169 F.R.D. 11, 15 (E.D.N.Y. 1996) ("[I]t is inconsequential whether the plaintiff has termed his document a notice of dismissal or a motion for dismissal."); *Roddy v. Dendy,* 141 F.R.D. 261, 261 (S.D.Miss.1992) ("Although the document filed by Roddy was denominated a Motion for Voluntary Dismissal rather than a notice of dismissal as specified in Rule 41(a)(1), the Court finds this distinction to be without legal significance since the effect desired by Roddy in filing the document with the Court was clearly to have his claims dismissed without prejudice.").

15. The Court analyzed why granting a preliminary injunction was appropriate in light of the Anti–Injunction Act in its prior opinion. *See Nat'l Century,* 407 B.R. at 900. The same analysis applies to the Court's issuance of a permanent injunction.

16. In its prior opinion, the Court noted, among other things, that "if the State Court were to grant her what she seeks, Hampton–Stein's Second State Court Action could lead to an order setting aside the entire NCFE Bankruptcy proceeding." *Id.* at 902 (internal quotation marks omitted). That is a remarkable request considering that the NCFE Debtors' bankruptcy cases involved several billion dollars of liabilities owed to investors, including financial institutions and pension funds, as well as other creditors, and were among the largest and most complex liquidating

the Court concludes that the Trust Parties also have now established actual success on the merits with respect to Hampton–Stein's violations of the Barton Doctrine. To reiterate: the Second State Court Action seeks to hold the Trust Parties liable for actions taken after the Petition Date-obtaining confirmation of the NCFE Plan, prosecuting the Preference Action, representing to others that the Settlement Agreement had not been assumed and asserting the Trust Parties' rights under the Barton Doctrine; in taking these actions, the Trust Parties are presumed under Sixth Circuit law to have been acting at the direction of Katz and Katz Ltd. for the purpose of administering the NCFE Debtors' estates; and Hampton–Stein alleged no facts demonstrating otherwise when she commenced the Second State Court Action. The Court, therefore, will convert the preliminary injunction of the Second State Court Action into a permanent injunction. *See Lai v. Wisotsky (In re Lai)*, 2006 WL 827794 at *3 (D.N.J. Mar.30, 2006) (affirming bankruptcy court's decision applying Barton Doctrine in permanently enjoining state court action against trustee and counsel); *Biebel*, 2009 WL 1451637 at *6 ("Since prior leave of this court was not sought prior to instituting the Defendant's Action, such action must be permanently enjoined."); [17] *Henkel v. Lickman (In re Lickman)*, 297 B.R. 162, 205–06 (Bankr.M.D.Fla.2003) (granting permanent injunction of lawsuit previously enjoined by preliminary injunction pursuant to the Barton Doctrine).

### D. The Trust Parties Are Entitled to a Hearing on Damages.

■ The Trust Parties are entitled to a hearing on the issue of the damages resulting from Hampton–Stein's violations of the Barton Doctrine. *See Allard*, 991 F.2d at 1242 ("[T]he Trustee must be given the opportunity to prove the amount of the damages incurred as a result of having to defend against the [state court action] including the necessity of the filing of the Trustee's complaint with the Bankruptcy Court in Detroit."); *Steffen v. Berman (In re Steffen)*, 406 B.R. 148, 153 (Bankr. M.D.Fla.2009) (imposing damages for violation of the Barton Doctrine after noting the "elementary requirement prior to filing a suit against a party is that the filer needs to determine whether or not he or she has the right to sue the party, espe-

Chapter 11 cases ever filed in Ohio. *See Amedisys, Inc. v. Nat'l Century Fin. Enters., Inc.*, 2006 WL 1209372 at *2 (S.D.Ohio May 2, 2006) ("This appeal is a part of what the bankruptcy court has called one of the largest and most complex bankruptcy proceedings in Ohio history. The Court's own experience with litigation arising out of the National Century bankruptcy proceedings confirms this.").

17. In *Biebel*, the defendant filed a motion to reconsider the bankruptcy court's injunction order, which directed, among other things, that the defendant take all necessary steps to dismiss the state court action ("Dismissal Provision"). The bankruptcy court denied the motion for reconsideration but deemed the defendant's still pending motion for a stay of the Dismissal Provision as a motion for a stay pending appeal. The bankruptcy court grant-

ed the motion for stay pending appeal in part. *See Katz v. Kucej (In re Biebel)*, 2009 WL 2413301 at *2 (Bankr.D.Conn. Aug.5, 2009) ("[I]t is further **ORDERED** that the Trustee shall not seek to enforce the Dismissal Provision during the period while the Appeal is pending in the District Court; *provided, further*, that the Defendant shall take no action whatsoever (directly or indirectly) to prosecute the State Court Action (other than to prosecute the Appeal) while the foregoing stay is in effect; *provided, further*, notwithstanding the foregoing, the remainder of the Injunction Order remains in full force and effect[.]"). The bankruptcy court also stated that "although the court remains confident with respect to the findings and conclusions set forth in the Decision (including the issuance of the Injunction Order prior to discovery), it cannot be said that the Appeal is plainly frivolous[.]" *Id.* at *2.

cially a court-appointed Trustee, and his court-approved attorneys"); *Biebel*, 2009 WL 1451637 at *6 (holding that the defendant had violated the Barton Doctrine and scheduling a further hearing to consider damages); *Byrd*, 2007 WL 1485441 at *2 ("[T]he Court will set for hearing the Trustee's request for damages and sanctions for the violations of the Barton Doctrine...."). The Court will enter a separate pre-trial order with respect to the Trust Parties' damages and will address any issues regarding the scope of discovery in accordance with that order and Local Bankruptcy Rule 7026–1.

## VI. Conclusion

For the foregoing reasons, the Court concludes that: (a) although now dismissed, the First State Court Action violated the Barton Doctrine (except to the extent that the claims asserted in the First State Court Action are based entirely on actions undertaken by the Trust Parties prior to the Petition Date); and (b) the Second State Court Action in its entirety violated the Barton Doctrine. The Court will enter a separate order permanently enjoining Hampton–Stein from pursuing the Second State Court Action in any court other than this Court. The Court also will enter a separate pre-trial scheduling order on the issue of the Trust Parties' damages.

**IT IS SO ORDERED.**