Filed 12/13/22

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| MEHRI AKHLAGHPOUR, | B308644 |
| Plaintiff and Appellant, | |
| | (Los Angeles County Super. Ct. No. 19STCV46403) |
| v. | |
| GIOVANNI ORANTES et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of Los Angeles County.  Rupert A. Byrdsong, Judge.  Reversed, with directions.

Law Offices of Farrah Mirabel and Farrah Mirabel for Plaintiff and Appellant.

Lewis Brisbois Bisgaard & Smith, Raul L. Martinez and Kenneth C. Feldman for Defendants and Respondents.

—————————————

## INTRODUCTION

Mehri (Mary) Akhlaghpour filed for bankruptcy under Chapter 11 of the United States Bankruptcy Code (Chapter 11) amid multiple client claims against her for fraud, embezzlement and misappropriation. After she settled the claims against her, the bankruptcy court dismissed the bankruptcy case. Akhlaghpour then, without seeking leave from the bankruptcy court, sued her court-approved bankruptcy counsel for malpractice in state court. The superior court sustained bankruptcy counsel's demurrer to Akhlaghpour's first amended complaint without leave to amend and entered a judgment dismissing the lawsuit with prejudice.

On appeal, Akhlaghpour contends the superior court erred in concluding that it lacked jurisdiction under the *Barton* doctrine, derived from *Barton v. Barbour* (1881) 104 U.S. 126 (*Barton*) and its progeny, which requires, before filing a lawsuit against officers appointed or approved by the court, obtaining leave from the bankruptcy court that appointed or approved them. The *Barton* doctrine did require Akhlaghpour to obtain leave from the bankruptcy court for claims arising out of bankruptcy counsel's court-approved representation of her as a debtor in possession. However, the *Barton* doctrine did not require Akhlaghpour to obtain leave to file claims arising out of bankruptcy counsel's representation after the bankruptcy court appointed a Chapter 11 trustee and Akhlaghpour was no longer a debtor in possession. Because Akhlaghpour has demonstrated a reasonable possibility that she can amend her complaint to state a cause of action, and because the trial court's dismissal with prejudice would preclude her even from later seeking leave from the bankruptcy court to refile, we reverse the judgment, and

affirm in part and reverse in part the trial court's rulings, with directions to grant Akhlaghpour leave to file a second amended complaint.

## FACTUAL AND PROCEDURAL HISTORY

1. *Akhlaghpour's Chapter11 Bankruptcy Petition, Approval of General Insolvency Counsel, Appointment of Trustee, and Dismissal of Petition*

Akhlaghpour, a tax preparer with two financial services corporations, faced judgments and claims filed against her by former clients alleging various forms of financial fraud. She owed a $650,000 settlement from one lawsuit, and another court had issued a tentative damages award for $1,164,780.28 in favor of another client. Akhlaghpour owned some assets, including five rental properties. Concerned about how she would handle the judgments against her, Akhlaghpour consulted Giovanni Orantes and Luis Solorzano of The Orantes Law Firm (collectively, Orantes) about filing for bankruptcy. One week after her consultation, on October 11, 2017, Orantes filed a Chapter 11 petition for Akhlaghpour.

Approximately one month after filing the petition, on November 7, 2017, Orantes sought approval to serve as Akhlaghpour's general insolvency counsel. The bankruptcy court granted the motion and approved Orantes on January 5, 2018.

Twenty days after the bankruptcy court approved Orantes as counsel, on January 25, 2018, it granted a motion filed by the Office of the United States Trustee to appoint a trustee. The bankruptcy court made the trustee appointment because of the suspicious timing of six questionable promissory notes, in the total amount of $1,164,750, secured by Akhlaghpour's real

3

properties, and executed by her in favor of a lender known as "Emymac." The Emymac liens were recorded on October 10, 2017, one day before Akhlaghpour filed the bankruptcy petition. Appointment of the trustee took effect on or around February 2, 2018.

On April 13, 2018, Akhlaghpour filed a motion to dismiss the bankruptcy petition, which the trustee opposed. The bankruptcy court denied the motion to dismiss, concluding that "prejudice to creditors . . . would result from the dismissal of this case, when the debtor has not sufficiently explained how she can and will pay the claims of her creditors following dismissal, in accordance with the priority scheme set forth in the Bankruptcy Code."

In April and May 2018, the bankruptcy court approved the trustee's motions to sell Akhlaghpour's real properties. By October 2018, the trustee had sold Akhlaghpour's five rental properties to pay creditors. Akhlaghpour ultimately settled all of her creditors' claims, with the settlements approved by the bankruptcy court on September 28, 2018.

On October 25, 2018, the trustee and Akhlaghpour filed a joint motion to dismiss the bankruptcy case due to satisfactory resolution of the claims. On December 4, 2018, the bankruptcy court granted the motion to dismiss. Three days later it approved Orantes's unopposed fee application pursuant to 11 U.S.C. section 330, for Orantes's services rendered from October 11, 2017 to February 6, 2018.

4

2. *Akhlaghpour's Malpractice Action Against Orantes, Orantes's Demurrer, and the Superior Court's Order Sustaining the Demurrer*

On December 27, 2019, nearly one year after the dismissal of her bankruptcy case, Akhlaghpour sued Orantes for legal malpractice and other claims in state court. Akhlaghpour's first amended complaint contained causes of action for professional negligence, breach of written and oral contract, breach of fiduciary duty, intentional and negligent misrepresentation, conversion, unjust enrichment, and equitable indemnity.

Akhlaghpour alleged that Orantes's conduct before and during the bankruptcy proceeding fell below the standard of care: filing her Chapter 11 petition without due diligence and without providing "in-depth" credit consulting for her, misrepresenting or omitting significant debts and claims in the petition, "throwing [her] under the bus" in her opposition to the motion for appointment of a trustee by declaring Orantes was not involved in the Emymac transactions, failing to seek dismissal of her petition before the motion for appointment of a trustee or prior to the trustee incurring significant costs, and neglecting settlement negotiations and documents. Certain of Akhlaghpour's allegations appear to concern Orantes's conduct after the trustee appointment on February 2, 2018: "Not filing a motion to dismiss much sooner than April 2018," jeopardizing settlement negotiations (which occurred during the trustee's appointment), "[f]ailing to file a motion to dismiss prior to Trustee incurring substantial costs," failing to seek credit from the trustee for sales of furniture, and filing an untimely and unhelpful joint motion with the trustee noticed for November 15, 2018.

5

Orantes demurred to the first amended complaint on the grounds that the *Barton* doctrine and res judicata barred Akhlaghpour's claims, and that Akhlaghpour lacked standing to pursue her claims because claims arising before and during the bankruptcy belong to the bankruptcy estate unless scheduled and abandoned by the trustee. Akhlaghpour opposed, arguing the *Barton* doctrine did not apply, that no statute required her to obtain leave, that she had no knowledge of the claims for res judicata purposes at the time the court considered the fee application (due to Orantes's fraud), and that a debtor in possession has standing to sue, relying on an informal exchange with the trustee to suggest the trustee had abandoned the malpractice claims. Akhlaghpour requested leave to amend her complaint to allege facts demonstrating that the *Barton* doctrine did not apply.

The superior court sustained the demurrer without leave to amend based on the *Barton* doctrine, finding it lacked jurisdiction to adjudicate Akhlaghpour's complaint. It did not reach the res judicata or standing issues. The court entered a judgment of dismissal with prejudice on September 17, 2020.

Akhlaghpour timely appealed.

## DISCUSSION

1. *Standard of Review*

"'In reviewing an order sustaining a demurrer, we examine the operative complaint de novo to determine whether it alleges facts sufficient to state a cause of action under any legal theory.'" (*Mathews v. Becerra* (2019) 8 Cal.5th 756, 768; accord, *T.H. v. Novartis Pharmaceuticals Corp.* (2017) 4 Cal.5th 145, 162.) "A judgment of dismissal after a demurrer has been sustained

6

without leave to amend will be affirmed if proper on any grounds stated in the demurrer, whether or not the court acted on that ground." (*Carman v. Alvord* (1982) 31 Cal.3d 318, 324.) We accept as true all well-pleaded factual allegations but not conclusions of fact or law. (*Southern California Gas Leak Cases* (2019) 7 Cal.5th 391, 395; accord, *Centinela Freeman Emergency Medical Associates v. Health Net of California, Inc.* (2016) 1 Cal.5th 994, 1010.) We review questions of law de novo. (See *Schrage v. Schrage* (2021) 69 Cal.App.5th 126, 151 [standing is a question of law]; *Samara v. Matar* (2017) 8 Cal.App.5th 796, 803, affd. (2018) 5 Cal.5th 322 [the applicability of claim preclusion or issue preclusion is a question of law]; *McKell v. Washington Mutual, Inc.* (2006) 142 Cal.App.4th 1457, 1478 [absent conflicting evidence, the question of jurisdiction is a question of law].)

When "'there is a reasonable possibility that the defect can be cured by amendment,'" a superior court abuses its discretion by sustaining a demurrer without leave to amend. (*Loeffler v. Target Corp.* (2014) 58 Cal.4th 1081, 1100; accord, *City of Dinuba v. County of Tulare* (2007) 41 Cal.4th 859, 865.) "The burden of proving such reasonable probability is squarely on the plaintiff." (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318; accord, *Sierra Palms Homeowners Assn. v. Metro Gold Line Foothill Extension Construction Authority* (2018) 19 Cal.App.5th 1127, 1132.)

2. *The Superior Court Erred in Entering Judgment Against Akhlaghpour Based on the* Barton *Doctrine*

Akhlaghpour contends the *Barton* doctrine does not apply to her malpractice action because state courts have jurisdiction to adjudicate malpractice claims against bankruptcy attorneys and,

7

as a debtor in possession, she was not required to seek leave from the bankruptcy court before prosecuting an action on behalf of the estate.  Akhlaghpour also argues the *Barton* doctrine does not apply to her claims based on Orantes's conduct pre-petition or after the dismissal of her bankruptcy case.  She further contends that even if the *Barton* doctrine applies to court-approved counsel, the prerequisites to apply the requirement are not satisfied in this case.  Orantes contends that the *Barton* doctrine precludes all of Akhlaghpour's claims regardless of the timing of Orantes's conduct.  Orantes's position is too broad.

a. The *Barton* doctrine applies to court-approved counsel representing a debtor in possession in a Chapter 11 bankruptcy proceeding

In *Barton, supra,* 104 U.S. 126, a train passenger asserted personal injury claims against a court-appointed receiver of the railroad company that operated her train.  (*Id.* at p. 127.)  The plaintiff did not obtain leave of the bankruptcy court that appointed the receiver before filing her lawsuit.  (*Ibid.*)  The receiver filed a plea to the jurisdiction, to which plaintiff demurred.  (*Ibid.*)  The trial court overruled the demurrer and entered judgment for the receiver.  (*Ibid.*)  The Supreme Court affirmed the judgment against the plaintiff, articulating "a general rule that before suit is brought against a receiver[,] leave of the court by which he was appointed must be obtained."  (*Id.* at p. 128.)

Cases since *Barton, supra,* 104 U.S. 126, have explained that the doctrine exists to ensure the "uniform application of bankruptcy law" by requiring "all legal proceedings that affect the administration of the bankruptcy estate be brought *either* in

8

bankruptcy court or with leave of the bankruptcy court."[1]  (*In re Harris* (9th Cir. 2009) 590 F.3d 730, 742.)  The doctrine also serves to protect receivers and trustees from the burden of "having to defend against suits by litigants disappointed by his actions on the court's behalf," which would impede their work for the court.  (*In re Linton* (7th Cir. 1998) 136 F.3d 544, 545 (*Linton*).)

Consistent with its purpose, the *Barton* doctrine has been applied to lawsuits against trustees, counsel for trustees, and other officers appointed or approved by the bankruptcy court. (*In re VistaCare Group, LLC* (3d Cir. 2012) 678 F.3d 218, 224 [collecting federal cases]; *Lawrence v. Goldberg* (11th Cir. 2009) 573 F.3d 1265, 1269 ["officers approved by the bankruptcy court when those officers function 'as the equivalent of court appointed officers'"]; *In re Crown Vantage, Inc.* (9th Cir. 2005) 421 F.3d 963, 971 (*Crown Vantage*) [*Barton* doctrine applies to trustees]; *In re Delorean Motor Co.* (6th Cir. 1993) 991 F.2d 1236, 1241 [counsel for trustees].)

In a Chapter 11 bankruptcy proceeding, a debtor in possession generally has all the rights of a trustee.  (11 U.S.C. § 1107, subd. (a).)  It follows that a court-approved attorney for a

---

[1]  "While we are not bound by decisions of the lower federal courts, even on federal questions, they are persuasive and entitled to great weight.  [Citation.]  Where lower federal precedents are divided or lacking, state courts must necessarily make an independent determination of federal law [citation], but where the decisions of the lower federal courts on a federal question are 'both numerous and consistent,' we should hesitate to reject their authority."  (*Etcheverry v. Tri-Ag Service, Inc.* (2000) 22 Cal.4th 316, 320-321, disapproved on another ground in *Bates v. Dow Agrosciences LLC* (2005) 544 U.S. 431, 436, fn. 5.)

debtor in possession is akin to counsel for a trustee, and the *Barton* doctrine applies. (See *In re Wilde Horse Enterprises, Inc.* (Bankr. C.D.Cal. 1991) 136 B.R. 830, 840 ["In a Chapter 11 proceeding, the attorney for debtor in possession, as an officer of the court charged to perform duties in the administration of the case, has a high fiduciary duty to the estate represented."].) Those obligations to the estate flow from the attorney's "fiduciary obligations . . . to the debtor in possession and [the attorney's] responsibilities as an officer of the court." (*In re Count Liberty, LLC* (Bankr. C.D.Cal. 2007) 370 B.R. 259, 280-281.) Thus, counsel for a debtor in possession "has an independent responsibility to determine whether a proposed course of action is likely to benefit the estate," not just the debtor individually. (*In re Perez* (9th Cir. 1994) 30 F.3d 1209, 1219.)[2]

---

[2]  In *Berg & Berg Enterprises, LLC v. Sherwood Partners, Inc.* (2005) 131 Cal.App.4th 802, 830-831, footnote 14 (*Berg & Berg*), the Sixth District Court of Appeal rejected the premise that counsel for a bankruptcy trustee or debtor in possession owe a duty of care directly to *creditors* of the estate, in the context of declining to find an analogous duty in the state law assignment for the benefit of creditors' context. To the extent the discussion in *Berg & Berg* endorses the minority view in federal decisions that counsel for debtors in possession have little or no fiduciary duty to the estate (e.g., *Hansen, Jones & Leta, P.C. v. Segal* (D.Utah. 1998) 220 B.R. 434, 465; *In re SIDCO, Inc.* (E.D.Cal. 1994) 173 B.R. 194, 196) we are not persuaded by that discussion of bankruptcy cases in the context of analogizing to a California state law issue unrelated to the present case. (*In re Count Liberty, LLC, supra,* 370 B.R. at p. 281 [collecting cases and noting "majority of courts addressing this issue" are in agreement]; *In re Grabill Corp.* (Bankr. N.D.Ill. 1990) 113 B.R. 966, 970 ["principle of fiduciary duties and obligations carries

Akhlaghpour misplaces reliance on *Wisdom v. Gugino* (D.Idaho 2019) 610 B.R. 327, for the contrary position. In *Wisdom,* a debtor's malpractice claims against his private counsel in a case under Chapter 7 of the Bankruptcy Code (Chapter 7) did "not impact the handling and administration of his estate" because the Chapter 7 counsel's duties did not involve the administration of the bankruptcy estate. (*Id.* at p. 337.) Defendants merely "were private counsel for a chapter 7 debtor, and they were neither court-appointed nor court-approved." (*Ibid.*) *Wisdom* stands for the rule, not applicable here, that the *Barton* doctrine does not apply to Chapter 7 debtor's counsel because, unlike Chapter 11 counsel, the bankruptcy court does not appoint or approve them (except in special circumstances).

b. Application of the *Barton* doctrine in this case

The *Barton* doctrine applies when three conditions are met: (1) the plaintiff is attempting to "initiate[] an action in another forum"; (2) the action is "against a bankruptcy trustee or other officer appointed by the bankruptcy court"; and (3) the action is "for acts done in the officer's official capacity."[3] (*Crown Vantage, supra,* 421 F.3d at p. 970.) All three conditions are met here.

---

over to the attorneys" retained for the debtor in possession], affd. sub nom. *Grabill Corp. v. Pelliccioni* (N.D.Ill. 1991) 135 B.R. 835, affd. sub nom. *In re Grabill Corp.* (7th Cir. 1993) 983 F.2d 773.)

[3] 28 U.S.C. section 959 codifies two limited exceptions to the *Barton* doctrine: a business exception and when an officer's actions exceed the bounds of his or her authority. Akhlaghpour suggests her claims of malpractice were based on *ultra vires* conduct, specifically Orantes's breaches of duties of loyalty and care. She cites no authority for this contention, and the allegations in her complaint—e.g., preparing schedules for a

11

First, Akhlaghpour initiated her malpractice action in state court, and not in the bankruptcy court.

Second, the state court action was against an officer approved by the bankruptcy court.[4] The bankruptcy court approved Orantes as general insolvency counsel to Akhlaghpour as a debtor in possession pursuant to 11 U.S.C. section 327. "Although [11 U.S.C.] § 327(a) directly applies only to trustees, § 1107(a) gives Chapter 11 debtors in possession the same authority as trustees to retain § 327(a) professionals," and "§ 327(a) professionals are hired to serve the administrator of the estate for the benefit of the estate." (*Baker Botts L.L.P. v. ASARCO LLC* (2015) 576 U.S. 121, 124, fn. 1, 127.)

Finally, most of the allegations in Akhlaghpour's complaint pertain to Orantes's actions in its "official capacity" as court-approved bankruptcy counsel. "To determine whether a complained-of act falls under the *Barton* doctrine, courts consider the nature of the function that the [court-appointed officer] was

_____

bankruptcy petition and opposing motions filed by the trustee—fall within the scope of counsel's duties to a debtor in possession and to the estate. (Cf. *Leonard v. Vrooman* (9th Cir. 1967) 383 F.2d 556, 560 ["[A] trustee wrongfully possessing property which is not an asset of the estate may be sued for damages arising out of his illegal occupation in a state court without leave of his appointing court."].)

[4]     Although "[t]he plain language of the *Barton* Doctrine suggests that the Doctrine applies only to court 'appointed' officers," we join with those courts that find the distinction between court "appointed" and "approved" officers "irrelevant." (*Blixseth v. Brown* (D.Mont. 2012) 470 B.R. 562, 567 [court-approved officers function "as the equivalent of court appointed officers for purposes of the *Barton* Doctrine"].)

performing during commission of the actions for which liability is sought"; actions presumably fall within the scope of their authority unless alleged facts demonstrate otherwise. (*McDaniel v. Blust* (4th Cir. 2012) 668 F.3d 153, 156-157; see *In re DeLorean, supra,* 991 F.2d at p. 1241 [*Barton* doctrine applies to all acts taken "for the purpose of administering the estate or protecting its assets"]; *In re Sedgwick* (C.D.Cal. 2016) 560 B.R. 786, 793 [*Barton* doctrine applicable to claims of "malpractice committed by Appellees in their official capacity as Appellant's bankruptcy attorneys"].)

The *Barton* doctrine also applies to Orantes's pre-petition and pre-approval conduct if that conduct "crossed the divide of the Petition Date" as interconnected actions "'taken by [Orantes] in the bankruptcy case and/or in the course of administering the bankruptcy estate.'" (*In re National Century Financial Enterprises, Inc.* (Bankr. S.D.Ohio 2010) 426 B.R. 282, 293, quoting *In re Byrd* (Bankr. D.Md. May 18, 2007, No. 04-35620-TJC) 2007 Bankr. Lexis 1764, affd. 417 B.R. 320 (D.Md. 2008), affd. 331 Fed.Appx. 212 (4th Cir. 2009).) Here, the only alleged pre-petition activities directly relate to advising Akhlaghpour (the presumptive debtor in possession) regarding, and preparing, the Chapter 11 petition during the week before Orantes filed it. These and the other alleged acts in Akhlaghpour's complaint before the trustee appointment "cross the divide" of the petition. (*Ibid.*; see *Cox v. Mariposa County* (E.D.Cal., Apr. 7, 2020, No. 19-CV-01105-AWI-BAM) 2020 WL 1689706, at *7 [wrongdoing "prior to commencement of the Receivership is inextricably intertwined with wrongdoing that took place after the Receivership took effect]; cf., *In re Yellowstone Mountain Club* (9th Cir. 2016) 841 F.3d 1090, 1095-

13

96 [where plaintiff "clearly separated his pre-petition claims from the post-petition claims that implicated" unsecured creditor committee president's conduct, and the pre-petition claims involve conduct unrelated to role on committee, *Barton* doctrine inapplicable].)  It would be impractical, if not impossible, to separate claims directed to the few days of advising about and preparing the petition from claims relating to the petition itself. Akhlaghpour herself makes no such distinction.  Thus "the claims fall squarely within the *Barton* Doctrine." (*In re National Century Financial Enterprises, Inc., supra,* 426 B.R. at p. 293.)

Akhlaghpour cites Federal Rules of Bankruptcy Procedure, rule 6009 and *California Aviation, Inc. v. Leeds* (1991) 233 Cal.App.3d 724 (*Leeds*), for the proposition that she could sue Orantes without leave from the bankruptcy court.  However, rule 6009 does not affect application of the *Barton* doctrine because it does not address jurisdiction over court-appointed or approved counsel outside of bankruptcy court, and it says nothing about a debtor out of possession filing a claim in state court. Rule 6009 provides:  "[w]ith or without court approval, the trustee or debtor in possession may prosecute or may enter an appearance and defend any pending action or proceeding by or against the debtor, or commence and prosecute any action or proceeding in behalf of the estate before any tribunal." (Accord, *Leeds,* at p. 729 [quoting same].)[5]  Contrary to Akhlaghpour's

---

[5]     Akhlaghpour relies heavily on *Leeds, supra,* 233 Cal.App.3d 724, but the facts and issues in *Leeds* materially differ from the ones here.  In *Leeds*, the debtor out of possession received bankruptcy court approval to pursue a malpractice action. (*Id.* at p. 728.)  The malpractice claim involved misconduct unrelated and prior to the bankruptcy. (*Ibid.*)  As a debtor in possession

14

argument, "[t]his rule establishes only that a trustee [or debtor in possession] may, with or without court approval, act as a representative of the estate in litigation." (*In re VistaCare Group, LLC* (3d Cir. 2012) 678 F.3d 218, 232.) Accordingly, pursuant to rule 6009 (and consistent with the *Barton* doctrine), Akhlaghpour—while debtor in possession—could have brought her claims against Orantes in bankruptcy court or against a non-appointed or approved third party in state court. But rule 6009 says nothing about pursuing claims while debtor out of possession against appointed or approved counsel.

Akhlaghpour makes much of the fact that she filed suit after the bankruptcy court dismissed the bankruptcy case. However, the timing of her suit does not affect our analysis. The *Barton* doctrine applies not only while the bankruptcy case remains open, but also "'after the bankruptcy case has been closed and the assets are no longer in the trustee's hands.'" (*Crown Vantage, supra,* 421 F.3d at p. 972, quoting *Muratore v. Darr* (1st Cir. 2004) 375 F.3d 140, 147 (*Muratore*) [applying *Barton* doctrine to claim of trustee misconduct filed after bankruptcy case closed]; see *Linton, supra,* 136 F.3d at pp. 544-545 [applying *Barton* to a state court lawsuit filed 11 months after bankruptcy case closed].)

The Eleventh Circuit in *Tufts v. Hay* (11th Cir. 2020) 977 F.3d 1204, 1209-1210, recently held that "the *Barton* doctrine has no application when jurisdiction over a matter no longer

—————————————

with court approval pursuant to Federal Rules of Bankruptcy Procedure, rule 6009, the plaintiff in *Leeds* had standing and could pursue a state court malpractice action against her prior attorney for non-bankruptcy misconduct. Thus, *Leeds* offers little guidance here.

15

exists in the bankruptcy court" where the "parties agreed [the action in a different forum] could have no conceivable effect on the bankruptcy estate." However, in so doing the Eleventh Circuit "expressly note[d] that our holding here creates no categorical rule that the *Barton* doctrine can never apply once a bankruptcy case ends," and stated "our decision today does not conflict with the views of our sister circuits" in cases such as *Muratore, supra,* 375 F.3d at p. 147, and *Linton, supra,* 136 F.3d at p. 545. (*Tufts,* at pp. 1209-1210 & fn. 4.)

The Eleventh Circuit then departed from *Muratore* and *Linton* in *Chua v. Ekonomou* (11th Cir. 2021) 1 F.4th 948, 954-955. The *Chua* court characterized its own precedent and that of its "sister circuits" as ignoring the underlying concern of *Barton*, namely the importance of only one court at a time exercising jurisdiction over a *res*. (*Chua*, at pp. 954-955.) Putting aside that *Chua* involved a terminated receivership, and not a dismissed Chapter 11 proceeding, the rationale for the prior Eleventh Circuit holdings and the still-current holdings from other courts apply here. *Chua* focused primarily on the liability of court-appointed officers, finding that shielding them from liability offered an unpersuasive basis to extend the *Barton* rule when they already enjoyed judicial immunity. (*Chua,* at pp. 954-955.) This case presents a different scenario. Orantes enjoys no judicial immunity for malpractice while representing Akhlaghpour as debtor out of possession; the parties here debate only which court should decide those claims. In addition, although the bankruptcy court did dismiss the case, it can also reopen it. (*In re Sedgwick, supra,* 560 B.R. at p. 792.) Indeed, nothing prevents Akhlaghpour from doing so. Finally, unlike in *Tufts* where the parties agreed the claims could not affect the

16

bankruptcy estate, here the claims do involve the *res* of the estate in the underlying bankruptcy. Had Akhlaghpour objected to Orantes's fee application and sought to litigate the malpractice issue at that time, the estate would have a claim on any recovery. A debtor out of possession should not be able to manipulate the estate's assets by the timing of when the debtor asserts its claims against a court-approved officer, thereby altering what estate assets the court has to distribute in the process.[6]

Thus, rather than depending on timing, application of the *Barton* doctrine here depends on whether the suit involves actions taken by a court-approved officer in his or her official capacity to administer the estate or protect its assets (it did) and whether the claims were part of the estate (they were). Accordingly, the superior court lacks subject matter jurisdiction

---

[6] At oral argument, Akhlaghpour asserted for the first time the *Barton* doctrine should not apply because she fully paid all creditors prior to dismissal of the bankruptcy case. Akhlaghpour forfeited this argument by not raising it sooner. (*People v. Crow* (1993) 6 Cal.4th 952, 960, fn. 7.) The argument also fails on the merits. First, even if the facts were as Akhlaghpour represented at oral argument, Akhlaghpour cites no authority, and we know of none, that would extinguish the *Barton* doctrine as a result. Second, in any event, the record does not support the notion that Akhlaghpour fully paid her creditors. In her opening brief, Akhlaghpour asserts only that she "settled all her debts," a very different concept than payment in full. Similarly, in her reply brief, she claims she "reached settlements in all of the litigation claims brought against her." Finally, the bankruptcy court's dismissal order directs payment to the trustee, payment in full of "allowed administrative claims," and payment of "the remaining balance of the funds in the Estate to creditor Vafi." The reference to payment of "remaining funds" does not suggest payment in full, as Akhlaghpour claimed.

17

over Akhlaghpour's claims against Orantes for actions taken as debtor in possession counsel. The *Barton* doctrine required Akhlaghpour to obtain leave of the bankruptcy court in order to sue Orantes in a forum other than the bankruptcy court. Having failed to do so, she cannot proceed with these malpractice claims in state court.[7]

           c. The *Barton* doctrine does not apply to counsel representing a debtor out of possession in a Chapter 11 bankruptcy proceeding

The appointment of a Chapter 11 trustee ended Orantes's court-approved official status and ended its fiduciary responsibility to the estate as counsel for a debtor in possession. Once a trustee is appointed, "the debtor-in-possession no longer exists as such because he no longer serves in the management of estate assets . . . . [¶] [J]ust as a trustee replaces the debtor-in-possession for the purpose of administering the estate and operating its business, so it is that the trustee's attorney displaces the debtor's attorney in order that the *trustee* will have counsel and assistance in performing his fiduciary duties." (*In re*

---

[7] The *Barton* doctrine does not deprive plaintiffs of a forum for their claims against court-appointed officers. It merely grants preliminary discretion to the bankruptcy court to determine whether the plaintiff must prosecute those claims in bankruptcy court or be permitted to litigate those claims in another jurisdiction. (*Crown Vantage, supra,* 421 F.3d at p. 976.) Accordingly, any dismissal entered based on the application of the *Barton* doctrine should be without prejudice. (*Ostrowski v. Miller* (1964) 226 Cal.App.2d 79, 87 [entering judgment with prejudice for failing to obtain leave from the appointing court was error; explaining the possibility of a future claim against the receiver in another action consented to by the appointing court].)

18

*NRG Resources, Inc.* (W.D.La. 1986) 64 B.R. 643, 647; contrast 11 U.S.C. § 521 ["Debtor's duties"] with 11 U.S.C. § 1107 ["Rights, powers, and duties of debtor in possession"]; cf. *Lamie v. United States Trustee* (2004) 540 U.S. 526, 532 [appointment of a Chapter 7 trustee in proceedings initiated under Chapter 11 "terminated [the debtor's] status as debtor-in-possession and so terminated [the attorney's] service under § 327 as an attorney for the debtor-in-possession"].) Thus, similar to the situation of a Chapter 7 debtor's attorney who owes no fiduciary duty to the estate, the *Barton* doctrine does not apply to counsel for a debtor out of possession.[8] (See, e.g., *In re Holcomb* (Bankr. 9th Cir. April 25, 2018, No. CC-17-1268-KuTaS) 2018 Bankr. Lexis 1256; *Wisdom v. Gugino, supra,* 610 B.R. at pp. 336-337.)

### 3. *Res Judicata Does Not Bar Akhlaghpour's Claims Based on Orantes's Actions After the Trustee Appointment*

The trial court did not reach the res judicata issue because it concluded the *Barton* doctrine barred Akhlaghpour's entire complaint. Having found that the *Barton* doctrine does not reach that far, we must consider whether res judicata bars what remains of Akhlaghpour's claims.

Akhlaghpour contends claim preclusion and issue preclusion do not require sustaining the demurrer because she was unaware of her malpractice claims until after Orantes "abandoned" her, and she was not in an adversarial proceeding

---

[8]     We express no opinion regarding the extent to which allegations of malpractice occurring after a trustee appointment could—similar to pre-petition conduct—"cross the divide" and implicate the *Barton* doctrine. That issue may depend, in part, on the nature of the allegations Akhlaghpour chooses to make in any amended complaint.

with Orantes at the time her bankruptcy petition was pending. Orantes argues that even if the *Barton* doctrine does not apply, claim preclusion and issue preclusion bar Akhlaghpour's malpractice claims, based on the order approving Orantes's fees for services rendered in the Chapter 11 proceedings.

Actions under the Bankruptcy Code present a federal question. "California follows the rule that the preclusive effect of a prior judgment of a federal court is determined by federal law, at least where the prior judgment was on the basis of federal question jurisdiction." (*Butcher v. Truck Ins. Exchange* (2000) 77 Cal.App.4th 1442, 1452.) Under federal law, claim preclusion bars Akhlaghpour's claims based on services addressed by the order granting Orantes's fee application. However, claim preclusion does not bar any claims based on Orantes's non-bankruptcy-related conduct before October 11, 2017, or any conduct after February 6, 2018. In other words, Orantes's fee application and order essentially only covered the period during which Orantes was performing services in its role as Akhlaghpour's bankruptcy counsel, which ended upon the trustee's appointment in February 2018. (These are the same claims barred by the *Barton* doctrine, in any event.)

"The preclusive effect of a judgment is defined by claim preclusion and issue preclusion, which are collectively referred to as 'res judicata.' Under the doctrine of claim preclusion, a final judgment forecloses 'successive litigation of the very same claim, whether or not relitigation of the claim raises the same issues as the earlier suit.' [Citation.] Issue preclusion, in contrast, bars 'successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment,' even if the issue recurs in the context of a different

20

claim. [Citation.]" (*Taylor v. Sturgell* (2008) 553 U.S. 880, 892 [fn. omitted]; see *Kopp v. Fair Pol. Practices Com.* (1995) 11 Cal.4th 607, 682 (conc. opn. of Kennard, J.) [summarizing federal claim preclusion and issue preclusion principles].) "Unlike issue preclusion, which applies only to issues that were actually litigated, claim preclusion applies not just to what was litigated, but more broadly to what could have been litigated." (*Guerrero v. Department of Corrections & Rehabilitation* (2018) 28 Cal.App.5th 1091, 1098 [discussing and applying federal preclusion law]; see *Capitol Hill Group v. Pillsbury, Winthrop, Shaw, Pittman, LLC* (D.C. Cir. 2009) 569 F.3d 485, 491 (*Capitol Hill Group*) ["'[R]es judicata . . . bars relitigation not only of matters determined in a previous litigation but also ones a party could have raised[.]'"].)

Under federal claim preclusion law, the judgment of a bankruptcy court bars a claim asserted in a later action when: "the prior judgment was final and on the merits"; "rendered by a court of competent jurisdiction in accordance with the requirements of due process"; "the parties are identical, or in privity, in the two actions;" and "the claims in the second matter are based upon the same cause of action involved in the earlier proceeding." (*In re Varat Enterprises, Inc.* (4th Cir. 1996) 81 F.3d 1310, 1315; accord, *Grausz v. Englander* (4th Cir. 2003) 321 F.3d 467, 472 (*Grausz*); *Capitol Hill Group, supra,* 569 F.3d at p. 490.) Here, Orantes submitted a final application for fees on October 24, 2018, prior to the dismissal of the bankruptcy. Orantes's fee application sought compensation, in itemized detail, for its work performed between October 11, 2017, and February 6, 2018, on case administration, claims administration and objections, fee and employment applications, financing,

creditor meetings, plan and statement disclosure, and relief from stay proceedings. The fee application included a declaration from Giovanni Orantes reiterating that Orantes played no role in the Emymac transactions and was unaware that Emymac had recorded the deeds of trust one day prior to Orantes filing the petition, which ultimately led to appointment of the trustee. Akhlaghpour submitted a declaration in support of the fee application stating: "I have reviewed the Application filed by The Orantes Law Firm, P.C. . . . I have no objection to the Application."[9] On December 7, 2018, three days after dismissing the bankruptcy case, the bankruptcy court held a hearing and approved Orantes's unopposed fee application pursuant to 11 U.S.C. section 330.

Numerous federal courts have concluded that claim preclusion bars a Chapter 11 debtor's malpractice claim against the debtor's bankruptcy counsel after the bankruptcy court issues a final fee application order. (E.g., *Grausz, supra,* 321 F.3d at p. 472; *In re Iannochino* (1st Cir. 2001) 242 F.3d 36, 47; *Weinberg v. Kaplan, LLC* (3d Cir. 2017) 699 Fed.Appx. 118, 120 (*Weinberg*); *In re Intelogic Trace, Inc.* (5th Cir. 2000) 200 F.3d 382, 388-390; *In re Robotic Vision Sys., Inc.* (Bankr. D.N.H. 2006) 343 B.R. 393, 397; *In re Blair* (Bankr. D.Md. 2005) 319 B.R. 420,

___

[9] Akhlaghpour submitted a contradictory declaration in opposition to Orantes's demurrer below, stating "On or about October 24, 2018, Defendants sent me a document and asked me to sign it. I noticed it was my declaration but there was no fee application attached. I trusted Defendants so much that I signed it and I had no reason to believe the fee application would contain false information." Thus, in one statement under oath Akhlaghpour states she did review the fee application, and in another she declares she did not.

22

434-435; *D.A. Elia Constr. Corp. v. Damon & Morey, LLP* (W.D.N.Y. 2008) 389 B.R. 314.) In evaluating whether a debtor was aware of its claim at the time of a bankruptcy court fee order, "'[w]e look at the date the final fee order was entered . . . and ask whether by that time [the debtor] knew or should have known there was a real likelihood that [it] had a malpractice claim.'" (*Capitol Hill Group, supra,* 569 F.3d at p. 491; accord, *Grausz, supra,* 321 F.3d at p. 474.) "[R]ather than considering whether the [debtors] knew of the precise legal contours of their malpractice claim at the time of the fee application, we must instead determine whether they knew of the factual basis of that claim." (*Iannochino,* at pp. 48-49.)

Claim preclusion would apply here to any services covered by the bankruptcy court fee order. First, the order approving Orantes's final fee application constitutes a "'final judgment, order, or decree.'" (*In re Yermakov* (9th Cir. 1983) 718 F.2d 1465, 1469.) Second, a Chapter 11 debtor is a "'party in interest'" to a fee application proceeding even if a trustee was appointed to administer the estate. Thus, a sufficient identity of parties exists between the fee application and the legal malpractice case to support claim preclusion. (*Grausz, supra,* 321 F.3d at p. 472; see *Capitol Hill Group, supra,* 569 F.3d at p. 491 ["the fee applications and the malpractice claim arise out of the same nucleus of facts and the identity element of res judicata is satisfied"].)

Third, the malpractice claim, like the earlier claim for fees, involves the acceptability of the legal services Orantes provided to Akhlaghpour in connection with her bankruptcy proceedings between October 11, 2017 and February 6, 2018. (*Grausz, supra,* 321 F.3d at p. 473.) An award of fees for bankruptcy under

23

11 U.S.C. section 330, subdivision (a)(3), represents a determination of "the nature, the extent, and the value of such services." (*In re Intelogic Trace, Inc.*, *supra*, 200 F.3d at p. 387.) "Award of the professionals' fees and enforcement of the appropriate standards of conduct are inseparably related functions of bankruptcy courts." (*In re Southmark Corp.* (5th Cir. 1999) 163 F.3d 925, 931.) "Section 330 of the Code specifically obligated the Bankruptcy Court to inquire into the nature and quality of these services, including whether '[Orantes]. . . demonstrated skill and experience in the bankruptcy field.'" (*Weinberg, supra,* 699 Fed.Appx. at p. 121; see 11 U.S.C. § 330(a)(3)(E).) "The instant malpractice claim similarly turns on whether [Orantes] breached the duty of care [ ] owed to his client in that situation, [citations], and requires consideration of evidence demonstrating that [the defendant's] conduct failed to meet the appropriate standard of care,' [citation]. Thus, these proceedings involved the same issue, and by allowing compensation under § 330, the Bankruptcy Court impliedly found that [Orantes's] services . . . were at least acceptable." (*Weinberg,* at p. 121; see *In re Intelogic Trace, Inc.,* at p. 387 [claim preclusion barred Chapter 7 trustee's malpractice claims against debtor's accounting professionals in the preceding Chapter 11 proceedings because the malpractice claims "arise from [the accounting firm's] alleged omissions in rendering the very same services considered by the bankruptcy court in the fee application hearing"].)

At the time of the final fee order, Akhlaghpour knew all of the facts underlying her first amended complaint. She "'was sufficiently aware of the real possibility of there being errors by [the bankruptcy professional] such as now alleged and of their

24

likely consequences before the fee hearing.'" (*Capitol Hill Group, supra*, 569 F.3d at p. 491; see *In re Intelogic Trace, Inc., supra,* 200 F.3d at p. 389 [at time of Chapter 11 fee hearing, debtor "had sufficient general awareness of the real potential for claims against [the debtor's bankruptcy accounting firm] such as those here asserted" and the opportunity to object and litigate those claims at the fee hearing].)  As evidenced by her declaration in support, Akhlaghpour had ample opportunity to object to the fee application but chose not to do so.  "The fact that [Akhlaghpour] did not take advantage of these procedures does not alter the fact that [she] could have done so and thus tried the malpractice claim at the time of the fee application."  (*In re Iannochino, supra,* 242 F.3d at p. 48.)

The fee application order, however, overlaps only the period Orantes represented Akhlaghpour as debtor in possession, before the trustee was appointed on or around February 2, 2018 (the same period already covered by the *Barton* doctrine).  It covers a few days after the trustee appointment date (which, if substantively related to the wrapping up of debtor in possession services, would also fall under the *Barton* doctrine), but does not itemize any services performed by Orantes after February 6, 2018, in its continuing capacity as counsel for Akhlaghpour as debtor out of possession.  Therefore, the fee application order can provide no preclusive effect for claims based on services rendered after February 6, 2018.  The parties did not have the opportunity to litigate, and the court did not approve, services after that date.

4. *Akhlaghpour Should Have Limited Leave To Amend*

Akhlaghpour contends the trial court should have sustained the demurrer with leave to amend so she could allege additional facts to show the *Barton* doctrine should not apply,

25

including facts establishing that the trustee advised Akhlaghpour she had the right to sue Orantes directly for malpractice, "the lack of salience" of Orantes's work to the administration of the estate, "the lack of court appointment of her counsel," and that she had standing to sue as debtor in possession after the bankruptcy was dismissed.  We agree only as to standing.

> a. Amendment would not affect application of the *Barton* doctrine to claims based on Orantes's actions as debtor in possession counsel

In her declaration opposing Orantes's demurrer, Akhlaghpour sought leave to amend and attached a December 2019 email exchange with the bankruptcy trustee.  In the email, Akhlaghpour stated to the trustee that counsel had advised her she could not sue Orantes without bankruptcy court permission because the alleged malpractice occurred while the bankruptcy petition was pending.  She asked if the trustee could either sue Orantes or ask the bankruptcy court to permit the trustee to abandon the right to sue.  The trustee responded that the trustee did not believe the estate had any malpractice claims against Orantes and that any remaining assets were abandoned to Akhlaghpour as the debtor after dismissal.  This informal email exchange with the trustee does not contain any express advisement from the trustee to Akhlaghpour that she could sue Orantes without leave of the bankruptcy court.  It also does not serve as any formal or legal abandonment of claims. (*Bostanian v. Liberty Savings Bank* (1997) 52 Cal.App.4th 1075, 1083 ["[u]ntil the debtor secures an abandonment of the claim, the debtor lacks standing to pursue it"].)

Akhlaghpour does not dispute that she never sought formal leave from the bankruptcy court to pursue her malpractice claim against Orantes in state court. Since she cannot amend to state she obtained such leave, there is no reasonable possibility that any amendment would affect the trial court's otherwise proper *Barton* analysis as to claims based on Orantes's actions as debtor in possession counsel.

   b. Akhlaghpour may amend to allege facts to support standing

As discussed above, the *Barton* doctrine and Orantes's fee application order do not bar the limited subset of Akhlaghpour's potential claims based on Orantes's actions as her counsel as a debtor out of possession beyond February 6, 2018, after the trustee appointment. However, she may only pursue those claims in state court if she has standing to do so.

Orantes contends generally that Akhlaghpour lacks standing to sue because her malpractice claims belong to the bankruptcy estate, even after dismissal, and only the trustee could prosecute them. Orantes cites no decisional authority specific to the standing of a Chapter 11 debtor to sue the debtor's bankruptcy counsel for actions taken after a trustee was appointed, perhaps because "there is a paucity of case law anywhere addressing, in any context, the standing of a Chapter 11 debtor out of possession[.]" (*In re Potter* (B.A.P. 10th Cir. 2002) 292 B.R. 711, fn. 13 (diss. opn of Pusateri, J.) However, "[f]or [Akhlaghpour] to have standing, [s]he, rather than the bankruptcy estate, must own the claim upon which [s]he is suing." (*Cusano v. Klein* (9th Cir. 2001) 264 F.3d 936, 945; see *In re Smith* (9th Cir. 2000) 235 F.3d 472, 477-478 ["The Bankruptcy Code distinguishes between property of the estate in

27

bankruptcy and property of the debtor."].)  The Bankruptcy Code defines the bankruptcy estate as "all legal and equitable interests of debtors in property as of the commencement of cases." (11 U.S.C. § 541; see also 11 U.S.C. § 541(a)(7)) [bankruptcy estate also includes "[a]ny interest in property that the estate acquires after the commencement of the case"]; 11 U.S.C. § 554(d) ["[P]roperty of the estate that is not abandoned under this section and that is not administered in the case remains property of the estate."].)

Therefore, we must assess whether Akhlaghpour has any legal malpractice claim not owned by the bankruptcy estate (limited as previously established to the subset of potential claims, if any, solely arising from Orantes's acts and omissions as debtor out of possession counsel after February 6, 2018). "[F]ederal law determines whether an interest is property of the bankruptcy estate" or whether it belongs to the debtor individually.  (*In re Witko* (11th Cir. 2004) 374 F.3d 1040, 1043.) Generally "[p]re-petition causes of action are part of the bankruptcy estate and post-petition causes of action are not." (*Id.* at p. 1042.)  "[W]e look to state law to determine when a claim arises, and if it arises on or before the commencement of the bankruptcy case, it is part of the bankruptcy estate."  (*In re Bracewell* (11th Cir. 2006) 454 F.3d 1234, 1242.)

Looking, then, to state law, the elements for a legal malpractice cause of action in California are:  "(1) the duty of the attorney to use such skill, prudence, and diligence as members of his or her profession commonly possess and exercise; (2) a breach of that duty; (3) a proximate causal connection between the breach and the resulting injury; and (4) actual loss or damage resulting from the attorney's negligence."  (*Coscia v. McKenna &*

28

*Cuneo* (2001) 25 Cal.4th 1194, 1199.)  Under Code of Civil Procedure section 340.6, "'a cause of action for legal malpractice accrues when the client discovers or should discover the facts essential to the malpractice claim, and suffers appreciable and actual harm from the malpractice.'"  (*Samuels v. Mix* (1999) 22 Cal.4th 1, 11, quoting *Laird v. Blacker* (1992) 2 Cal.4th 606, 611.)  Where actual fraud is alleged against an attorney in the performance of his or her professional services, Code of Civil Procedure section 338, subdivision (d), applies, setting out a three-year statute of limitations for fraud actions.  (*Stueve Bros. Farms, LLC v. Berger Kahn* (2013) 222 Cal.App.4th 303, 321-322.)  A cause of action for fraud accrues upon discovery of the fraud by the aggrieved party.  (*Id.* at p. 321; Code Civ. Proc., § 338, subd. (d).)

Akhlaghpour alleges that she did not know about Orantes's negligence until the trustee sought appointment and then took control of her assets to satisfy her creditors.  She also has alleged several acts that took place after Orantes filed the bankruptcy petition, specifically having to do with Orantes's response to the trustee appointment and various trustee actions.

In response, Orantes argues that Akhlaghpour's malpractice claims are "sufficiently rooted" in her pre-bankruptcy past to be considered property of the estate.  Orantes generally relies on a line of cases tracing back to *Segal v. Rochelle* (1966) 382 U.S. 375 (*Segal*).  (E.g., *In re Strada Design Associates, Inc.* (Bankr. S.D.N.Y. 2005) 326 B.R. 229, 238 [Chapter 7 debtors' malpractice claims against counsel based on pre-petition consultation and alleged lack of due care in filing "had all of their roots in the Debtors' pre-bankruptcy past" and estate owns post-petition causes of action for legal malpractice by debtor's counsel

where the post-petition claim is impossible to sever from pre-petition actions]; *In re Alvarez* (11th Cir. 2000) 224 F.3d 1273, 1279 [debtors' legal malpractice cause of action based on negligent filing of a Chapter 7 petition was an interest "'sufficiently rooted in the pre-bankruptcy past'" to constitute property of the estate; debtor established an attorney-client relationship with counsel prior to filing and his cause of action arose from his interactions with the firm prior to filing, with damages in the form of loss of control and ownership of assets occurring at the moment of filing]; *In re Tomaiolo* (Bankr. D.Mass. 1997) 205 B.R. 10, 14-16 [counsel's alleged negligent legal advice to file bankruptcy petition, failure to cure errors in the petition and failure to adequately advise the debtor of his rights, duties and obligations had pre-petition roots and were property of the estate].)

However, this authority generally predates *In re Bracewell*, which criticizes the cases relied on by Orantes for not recognizing that *Segal, supra,* 382 U.S. 375 predates the substantial revisions to the Bankruptcy Code in 1978. (*In re Bracewell, supra,* 454 F.3d at pp. 1241-1243 [specifically criticizing the "sufficiently rooted" language as contrary to plain meaning of 11 U.S.C. section 541(a)(1), "restricting property of the estate to that which existed 'as of the commencement of the case'"]; accord, *In re Glaser* (9th Cir. 2020) 816 Fed.Appx. 103, 104 [upholding bankruptcy panel decision observing that the Ninth Circuit continues to rely on *Segal* in a limited way, but finding that where state law requires damage as an element of a malpractice action, and where that damage did not occur until after the bankruptcy, the malpractice claim does not belong to the estate].)

Where the trial court has sustained a demurrer without leave to amend, on appeal we must "determine whether or not the plaintiff could amend the complaint to state a cause of action." (*Das v. Bank of America, N.A.* (2010) 186 Cal.App.4th 727, 734.) However, "the burden falls upon the plaintiff to show what facts he or she could plead to cure the existing defects in the complaint. [Citation.] 'To meet this burden, a plaintiff must submit a proposed amended complaint or, on appeal, enumerate the facts and demonstrate how those facts establish a cause of action.'" (*Ibid*.; see *Schifando v. City of Los Angeles* (2003) 31 Cal.4th 1074, 1081 ["[t]he plaintiff has the burden of proving that an amendment would cure the defect"].) Here, "we cannot say that it is clear that the complaint could not be saved by any amendment." (*Maya v. Centex Corp.* (9th Cir. 2011) 658 F.3d 1060, 1073.) It appears reasonably possible that Akhlaghpour could amend to state facts supporting the occurrence of "actual loss or damage" resulting from Orantes's acts and omissions as debtor's counsel after the trustee appointment. Indeed, as a result of our other rulings above, she may proceed only with claims arising from conduct after February 6, 2018, in any event. Accordingly, Akhlaghpour should be permitted leave to amend her complaint accordingly.

## DISPOSITION

The judgment of the superior court is reversed. On remand, the superior court is directed to grant Akhlaghpour leave to amend her complaint to state any claims based solely on Orantes's conduct during the period she was a debtor out of possession and, if she can, to allege facts sufficient to establish

standing for such claims.  The parties shall bear their own costs on appeal.


HOWARD, J.*


We concur:


PERLUSS, P.J.


FEUER, J.

---

*       Judge of the Marin County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.